J-A09012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: K.B.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MONTGOMERY COUNTY EMERGENCY SERVICES, INC. AND MONTGOMERY COUNTY BEHAVIORAL AND DISABILITIES OFFICE, | |
| Appellee | No. 965 EDA 2014 |

Appeal from the Order Entered March 19, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-25994

BEFORE: BOWES, DONOHUE, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 20, 2015**

K.B.F. appeals from the March 19, 2014 order denying his petition seeking expungement of an involuntary mental health commitment that was initiated under the Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7101, *et seq.* Appellant also asks us to reverse the trial court's refusal to allow him direct review of the procedural and factual propriety of the mental health proceeding in question. We affirm.

On August 19, 2013, Appellant instituted this action by filing a document entitled "Petition to Expunge Under Section 7302 and Section 7303 of the Mental Health Procedures Act and Expungement of Record Pursuant to 18 Pa.C.S. Sections 6105(f)(1) and 6111.1(g)(2)," (hereinafter

"Petition").  On December 4, 2013, he filed an amendment of that document entitled "Amendment of Expungement Petition to Include Appeal of K.B.F. from the Involuntary Commitments and Order for Treatment Issued by Defendants and its Doctors and Mental Health Hearing Officer and a Request for Review of the Proceedings Conducted under Title 50 of the Pennsylvania statutes Entitled 'Mental Health'" (hereinafter "Amended Petition").  The named defendants in this action were Montgomery County Emergency Services, Inc. and Montgomery County Behavioral and Disabilities Office. Montgomery County Emergency Services, Inc. replied to the petitions and is the Appellee herein.

We first set forth the pertinent underlying facts, as found by the trial court.

On the evening of July 10, 2009, K.B.F. got into an altercation with his father, who then contacted the police. K..B.F. was transported to Montgomery County Emergency Services (MCES") by squad car, arriving at about 12:45 a.m. on July 11, 2009.  Dr. Sujana Kurri examined him at approximately 1:40 a.m. and found that the Petitioner was severely mentally disabled and in need of treatment. Dr. Kurri further found that the Petitioner should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed one-hundred and twenty (120) hours.

The Petitioner's father completed an application for a "302" commitment ([50] P.S. § 7302) of his son, alleging his son had attempted suicide and that there was a reasonable probability of suicide unless his son received adequate treatment. The Petitioner's father also alleged that his son had attempted to mutilate himself and that there was a reasonable probability of mutilation if the Petitioner was not afforded treatment under the Act.

- 2 -

On July 13, 2009, an MCES psychiatrist, Dr. Jordan Santina, examined the Petitioner and found him to be severely mentally ill and in need of treatment. As such, Dr. Santina requested that the Court certify the Petitioner for extended involuntary treatment under Section 303 of the Act (50 P_S. § 7303). The Petitioner was later served with a copy of a 303 Petition by MCES's court court coordinator, Christina Harmon. Ms. Harmon explained to the Petitioner that he had a fight to a hearing before a Mental Health Review Officer ("MHRO"), a right to counsel, and a right to request a hearing before a judge within seventy-two (72) hours if he was not satisfied with the results of the hearing before the MHRO.

The following day, on July 14, 2009, MHRO Joseph McGrory conducted a hearing, at which the Petitioner was represented by Public Defender Gina Mattaliano. At the hearing, the Petitioner acknowledged that he understood he was being ordered to participate in up to twenty (20) days of outpatient treatment. He also acknowledged that he would be required to show up for his appointments, take any medications, and comply with his treatment plan or he would be brought back to MCES for inpatient treatment.

Petitioner's counsel placed on the record that she explained to Petitioner his rights and that he understood and wished to waive them. Counsel also stipulated that the petition on its face was sufficient for certification under Section 303.

A board certified psychiatrist then testified that Petitioner was mentally ill as defined by the Act. The doctor also testified that Petitioner had committed acts that would satisfy Section 301, that those behaviors would continue if Petitioner was not afforded treatment, and that twenty (20) days outpatient was the least restrictive treatment alternative.

Trial Court Opinion, 5/22/14, at 1-3. Appellant filed this lawsuit nearly four years later, on August 19, 2013,

In his Petition and Amended Petition filed in the present lawsuit, Appellant sought expungement of the involuntary treatment proceeding

pursuant to 18 Pa.C.S. § 6105(f)(1) and § 6111.1(g)(2).[1] He also asked the trial court to directly review whether there was a sufficient factual basis for a finding that he was in need of extended involuntary treatment under § 7303. Appellant averred the following in this respect. He contended that his behavior on the night of July 10, 2009, was solely the result of an interaction between alcohol and an antibiotic that he was taking to treat Lyme's disease, and that he did not attempt to cut himself with the broken porch light, nor was he mentally ill. Appellant did report that, on July 10, 2009, he was under the care of a psychiatrist and was taking prescription medication for post-traumatic stress disorder caused by an assault. Appellant maintained that no doctor involved in the MHPA proceedings actually determined either that he was severely mentally disabled due to a mental illness or that he was a clear and present danger to himself or others.[2]

_____

[1] The provisions of § 6111.1(g)(2) are set forth *infra* in connection with our discussion of whether it allows for expungement of Appellant's mental health records herein. In his petition filed at the trial court level, Appellant did seek expunction under 18 Pa.C.S. § 6105, but he does not advance in this appeal any claim in that respect. **See In re Keyes**, 83 A.3d 1016 (Pa.Super. 2013) (§ 6105 does not provide avenue for expungement of MHPA records). We note that a different subsection of § 6111.1, subsection (f) was declared unconstitutional by the Commonwealth Court. **Leach v. Commonwealth**, 118 A.3d 1271, 1273 (Pa.Comwlth. 2015).

[2] On appeal, Appellant points out that, while there is a transcript of the hearing before the mental health review officer, the other portions of the record of his involuntary commitment proceeding, including the § 7302 and § 7303 petitions, are not contained in the certified record on appeal. Appellant was the moving party herein, challenging the factual basis for his

*(Footnote Continued Next Page)*

- 4 -

A hearing was held on the Petition and Amended Petition on January 8, 2014. Appellant sought to discredit the factual basis for the §§ 7302/7303 proceeding and to obtain either its expungement or direct review of its propriety. Appellee countered that any request for direct review of the MHPA proceedings was untimely and that Appellant could not obtain expungement of a § 7303 extended involuntary treatment under the two statutory provisions that Appellant had invoked in his petitions, 18 Pa.C.S. §§ 6105(f)(1) and 6111.1(g)(2). Appellee maintained that the impetus for these proceedings was that Appellant attempted to purchase a gun in Bucks County and was arrested for unsworn falsifications for failing to reveal the fact that he had been involuntarily committed under § 7303. The trial court focused on whether Appellant could obtain review of the MHPA proceeding in the first instance since the challenged proceeding transpired four years before Appellant's petitions were filed, the procedural mandates of the MHPA were followed, and neither § 6105 nor § 6111.1(g)(2) allowed for expunction of a § 7303 commitment.

Appellant posited that direct review of the involuntary commitment proceeding was proper since the commitment proceedings imposed

_(Footnote Continued)_ ───────────────

commitment, and he is also the appealing party before this Court. Thus, any default in this respect is attributable to Appellant. **Commonwealth v. Powell**, 956 A.2d 406, 423 (Pa. 2008) (it is the appellant's responsibility to ensure that the record contains the materials necessary to conduct appellate review; when an appellant presents a claim dependent upon examination of items not included in the record, the claim is waived).

continuing disabilities upon him. Specifically, he noted that he could no longer exercise his constitutional right to bear arms pursuant to 18 Pa.C.S. § 6105(c)(4) ("A person . . . who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act" is not permitted to possess a firearm in Pennsylvania.). Appellant also pointed out that the existence of the MHPA records could affect his future employment opportunities and reputation. He suggested that the MHPA contained no time limitation for obtaining direct review by the court of common pleas of the propriety of an involuntary commitment proceeding.

Appellant's two petitions were denied by an order of court entered on March 19, 2014. The trial court found that Appellant was not entitled to expungement of his mental health records under the statutes upon which he relied. The trial court also concluded that Appellant's August 19, 2013 petition was not a timely appeal under the MHPA with respect to the July 14, 2009 § 7303 adjudication and that Appellant had failed to set forth grounds for allowance of an appeal *nunc pro tunc*. This appeal followed.

Appellant raises these contentions on appeal:

1. When the procedures of the strictly construed Pennsylvania Mental Health Act (50 P.S. § 7301 et seq.) are not followed, rendering the involuntary commitment illegal under Fourteenth Amendment due process and void *ab initio*, did the Lower Court err in refusing to hold a hearing on appellant's Petition for

- 6 -

Review and Expungement, citing § 5571 of the Pennsylvania Judicial Procedure Act's 30 day appeal period, when the Mental Health Act itself sets forth no time period and Pennsylvania Appellate Courts have consistently held that involuntary commitment issues are never moot, considering the stigma and injury to reputation, and constitute a continuing harm, while challenged procedures could continue yet their propriety would evade appellate review of a matter of public interest?

(Answered in the negative by the Court below).

2. Did the Lower Court err in finding the case of **In re Keyes**, 83 A.3d 1016, 1024, prevented the Court from conducting a hearing on Appellant's Petition to Expunge the 302 under 18 Pa.C.S.A. § 6111.1(g)(2) even though appellant's involuntary commitment was outpatient, while **Keyes** involved an inpatient commitment, and both 50 P.S. § 7303 and 18 Pa.C.S.A. § 6105(c)(4) preclude firearm possession only to those persons involuntarily committed to a mental institution for inpatient care and treatment under §§ 302, 303 or 304 of the Pennsylvania Mental Health Act?

(Answered in the negative by the Court below).

3. Was it error for the Lower Court Opinion to review facts and evidence never properly introduced at a hearing or made part of the Court record, but appears to be based on argument or briefs of counsel, neither of which are evidence, with the Court never conducting a hearing on the merits of the Petitions?

(Not answered by the Court below).

4. Did the Lower Court err in finding that appellant has not alleged any factors that would allow it to grant a *nunc pro tunc* appeal, even though the Court found that *no nunc pro tunc* petition had been filed setting forth any factors for consideration?

(Answered in the negative by the Court below).

5. Since an involuntary commitment is a quasi-criminal proceeding, did the Lower Court err in denying a hearing similar to a criminal PCRA, when the Second Amendment constitutional prohibitions are ongoing and the Hospital, State Police and NCIS

data base records continue to label appellant a mental defective, with the associated stigma and injury to reputation protected by Article I, Section 2 of the Pennsylvania Constitution, and appellant's Petitions set forth both factual and procedural errors regarding his commitment?

(Not answered by the Court below).

6. Did the Lower Court err in failing to consider appellant's constitutional due process violations regarding the 302 involuntary commitment since appellant is prohibited from owning or possessing a gun, a right guaranteed by the Second Amendment and which right cannot be deprived without the protections provided by due process?

(Not answered by the Court below).

Appellant's brief at 4-5.

As Appellant notes, the trial court never addressed questions three, five, and six. The reason for this omission flows from the fact that these issues were not raised before the trial court. They therefore are waived for purposes of this appeal. *Tecce v. Hally*, 106 A.3d 728, 732 (Pa.Super. 2014) ("It is axiomatic that, to preserve an objection for appeal, the objection must be raised before the trial court."). Specifically, as to issue three, at the January 8, 2014 hearing, Appellant did not object at any point to the receipt of information by the trial court through argument and by reliance upon the averments in pleadings. Thus, contention three is waived. *Id*. ("Pennsylvania's appellate courts have held, without apparent exception, that the failure to object to unsworn testimony subjects a litigant to waiver.").

Similarly, Appellant never maintained, as he does in question five, that he should be afforded PCRA-type relief since involuntary commitments are quasi-criminal in nature. To the contrary, he was adamant that he was not seeking relief through means of the PCRA. Hearing, 1/8/14, at 25 (Appellant's counsel: "No, it's not a PCRA"). Issue five is therefore also waived.

As to his sixth allegation, Appellant did not challenge the constitutionality of § 6105 under the Second Amendment of the United States Constitution based upon the fact that § 6105 renders a person who was subject to an involuntary commitment proceeding ineligible to own a firearm.[3] Accordingly, Appellant's sixth issue is waived. **Tecce**, **supra** at

_____

[3] Appellant's original Petition and Amended Petition do not include a claim that § 6105 is unconstitutional because it prevents him from owning a gun. Likewise, this position was not presented at the hearing. In his brief, Appellant notes that he raised constitutional challenges in his petitions and cites portions of them. Appellant's brief at 51. Our review of the sections of the petitions relied upon by Appellant establishes that issue six was not raised therein. The primary premise of both petitions was that the procedure of the MHPS were violated and he was not mentally ill or severally mentally disabled.

In his first Petition, Appellant maintained that he should have been given the opportunity to voluntarily commit himself on July 10, 2009, so that he could retain the right to carry a firearm. Petition, 8/19/13, at ¶ 17. He also averred that his due process and equal protection rights were violated because Appellee did not follow the "statutory procedures set forth in 50 P.S. § 7302 and 50 P.S. § 7303." **Id**. at ¶ 46. As outlined herein, the statutory procedures outlined in §§ 7202 and 7303 were scrupulously followed.

*(Footnote Continued Next Page)*

732 ("Parties may waive rights, even due process rights and other rights of constitutional magnitude.").

Contention number six is waived for a second reason. Appellant avers that § 6105 is unconstitutional, but has failed to notify the Attorney General of Pennsylvania of his challenge, as required by Pa.R.C.P. 235. That rule states that in any civil proceeding, "in which an Act of Assembly is alleged to be unconstitutional . . . and the Commonwealth is not a party, the party raising the question of constitutionality . . . shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice." Pa.R.C.P. 235. We have held

_____
*(Footnote Continued)*

In the Amended Petition, Appellant suggested that his public defender was not authorized to stipulate to a finding that he was in need of extended involuntary treatment because that stipulation resulted in deprivation of his gun ownership rights. Amended Petition, 12/6/13, at ¶ 41. Appellant also repeated the position that the mental health proceeding violated his due process rights. *Id*. at ¶ 43. None of Appellant's constitutional positions included a position that § 6105 was unconstitutional under the Second Amendment.

At argument, Appellant's position regarding the impact of the Second Amendment on this matter was as follows. Appellant was asked whether there was a time limit for challenging the determination of a mental health review officer that someone was in need of extended involuntary mental health treatment. He responded, "No because there is a disability. Now there's a Second Amendment disability." Petition Hearing, 1/8/14, at 3. Appellant continued by observing that the Second Amendment accords a citizen the right to bear arms, and Appellant represented that "as long as that disability, the consequences exist, there is not [a] statute of limitations" for challenging the § 7303 determination. *Id*. at 4.

that in an "action that involves a constitutional challenge to a statute, in which the Commonwealth is not a party, failure to provide Rule 235 notice results in waiver of the constitutional issue." ***Adelphia Cablevision Associates of Radnor, L.P. v. University City Housing Co.***, 755 A.2d 703, 709 (Pa.Super. 2000). Therefore, issues three, five and six are waived for purposes of this appeal.

We now address Appellant's first question, which is a compendium of various claims but primarily challenges the trial court's determination that he was not entitled to direct review of the 2009 MHPA proceeding. This position pertains to the interpretation of § 7303's provision relating to appeals. Questions of statutory construction present questions of law, and our "standard of review is *de novo* and our scope of review is plenary." ***Dorsey v. Redman***, 96 A.3d 332, 337 (Pa. 2014).

In deciding that Appellant could not obtain direct review in 2013 of the 2009 proceeding, the trial court herein relied upon the fact that Appellant did have the right to appeal the July 14, 2009 decision of the mental health hearing officer, as outlined in § 7303 of the MHPA, but failed to file such an appeal after the hearing conducted by the mental health review officer. The pertinent provision states, "In all cases in which the [§ 7303] hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification." 50 P.S. § 7303(g). Thus,

- 11 -

this subsection permitted Appellant to obtain review of his extended involuntary commitment proceeding in July 2009.

As the trial court aptly observed, there is no indication in § 7303(g) as to when a petition for review to the court of common pleas must be filed. The trial court concluded that 42 Pa.C.S. § 5571, which governs appeals generally, provided the applicable timeframe. Subsection (b) therein states, "Except as otherwise provided in subsections (a) [relating to appeals to the appellate courts] and (c) [outlining exceptions not applicable herein] and in section 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.), an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order." 42 Pa.C.S. § 5571(b).

Our Supreme Court has observed that a mental health review officer is "a law-trained, quasi-judicial officer who prepares a certification of findings 'as to the reasons that extended involuntary treatment is necessary and a description of the treatment to be provided[.]'" *In re K.L.S.*, 934 A.2d 1244, 1247-48 (Pa. 2007) (partially quoting 50 P.S. § 7303(d); footnote omitted). Hence, a proceeding before a mental health review officer is properly characterized as a tribunal or other governmental unit.

We conclude that the trial court's construction of these statutes is unassailable. In § 7303(g), the MHPA permits review by the court of

common pleas of the determination of a mental health review officer that a person is in need of extended emergency involuntary treatment. Section 5571, which is contained in the Judicial Code, outlines time limitations for taking appeals, and applies generally to all proceedings before a tribunal or governmental unit. Indeed, our Supreme Court has observed that 42 Pa.C.S. § 5571(b) prescribes the period within which an appeal must be taken for all appeals permitted by statute. *Appeal of Chartiers Valley School Dist. from Assessment of Property of Development Dimensions Intern., Inc.*, 462 A.2d 673, 674 (Pa. 1983). Section 7303(g) is a statute and permits an appeal; therefore, 42 Pa.C.S. § 5571(b) outlines the period within which such an appeal must be filed.

Hence, the trial court properly held that Appellant could not obtain, through an August 19, 2013 petition, direct review in the court of common pleas of the propriety of his extended involuntary commitment proceeding since it occurred from July 10 through July 14, 2009. Appellant's assertion that there was no time limit on his right to appeal to the court of common pleas from the mental health review officer's finding that he was in need of extended involuntary commitment is without merit. Appellant's brief at 26. (42 Pa.C.S. § 5571(b) "conflicts with the Mental Health Procedures Act itself, which sets forth no time limit to file a Common Pleas Court petition to review the Hearing Officer certification.").

In connection with his first position, Appellant also maintains that "the procedures of the strictly construed Pennsylvania Mental Health Act (50 P.S. § 7301 et seq.) [were] not followed, rendering the involuntary commitment illegal under Fourteenth Amendment due process and void *ab initio*." Appellant's brief at 26; *Id*. at 27 ("Because of the procedural defects, the commitment should never have taken effect."). The various procedural steps enacted by the legislature in the MHPA are safeguards specifically designed to protect a patient's due process rights. *In re J.M.*, 726 A.2d 1041, 1047 n. 9 (Pa. 1999); *In re Ryan*, 784 A.2d 803 (Pa.Super. 2001).

We disagree with Appellant's claim that his procedural due process rights were violated because we conclude that each mandate of the MHPA was followed. Section 7301 of the MHPA, relating to persons who may be subject to involuntary emergency examination and treatment, provides that if "a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment." 50 P.S. § 7301(a). That provision further states that an individual is "severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." *Id*. Included within the definition of a person who has posed a clear and present danger of harm to himself is someone who has attempted

suicide or attempted to substantially mutilate himself if there is a reasonable probability of suicide or mutilation unless the person obtains adequate treatment under the Act.[4]

_____

[4] Specifically, the MHPA outlines:

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

> (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

> (ii) **the person has attempted suicide** and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

> (iii) **the person has substantially mutilated himself or attempted to mutilate himself substantially** and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation

50 P.S. § 7301 (emphases added)(b)(2).

In this case, the strictures of § 7301 were met.  On the night of July 10, 2009, Appellant had an altercation with his father, who ejected Appellant from the house.  While on the porch of his home, Appellant broke a porch light and started to cut his wrists with the broken glass, evidencing that he was a danger to himself as he was attempting to either kill himself or substantially mutilate himself. After viewing Appellant's attempt to harm himself with broken glass by cutting his wrists, Appellant's father called the police, who transported Appellant to Montgomery County Emergency Services, Inc.

Section 7302 of the MHPA allows for an involuntary emergency examination and treatment for a period not to exceed 120 hours (five days). It provides that an involuntary emergency treatment examination can be "undertaken at a treatment facility . . . upon application by . . . [an] authorized person who has personally observed conduct showing the need for such examination."   50 P.S. § 7302(a).   Herein, Appellant's father followed the police to Montgomery County Emergency Services, Inc., and the "father completed an application for an involuntary examination and treatment under § [7]302 of the MHPA, claiming he believed petitioner either attempted suicide or mutilated himself or attempted to mutilate himself."   Memorandum in Support of Petition and Amended Petition, 2/6/14, at 8.   Since Appellant's father personally observed behavior

demonstrating a need for an involuntary emergency treatment examination and applied for such treatment, the requirements of § 7302 were met.

Section 7302(b) also provides, "A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section [7]301 and in need of immediate treatment." In this matter, Appellant arrived at Montgomery County Emergency Services, Inc. at 12:45 a.m., and was examined at 1:40 a.m., within two hours. Dr. Sujana Kurri examined Appellant and found that he was severely mentally disabled and in need of treatment. Dr. Kurri concluded that Appellant should be admitted to a treatment facility for a period not to exceed 120 hours.

Involuntary emergency treatment may be extended beyond five days under 50 P.S. § 7303(a), which states: "Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section [7]302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." The record in this case reveals that on July 13, 2009, Dr. Jordan Santina, a psychiatrist, examined Appellant and found that he was severely mentally disabled and in need of further treatment. Dr. Santina therefore requested that Appellant be certified by a mental health review officer as in need of extended involuntary emergency treatment. The petition completed by Dr. Santina recommended that Appellant receive inpatient treatment. Appellant was

served with a copy of the § 7303 petition and its contents were explained to him by the hospital's mental health court coordinator.[5]

Once a petition for extended involuntary emergency treatment is filed, § 7303(b) requires appointment of counsel and a hearing before a judge or mental health review officer. That provision reads: "Upon receiving [a § 7303(a)] application, the court of common pleas shall appoint an attorney who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation. Within 24 hours after the application is filed, an informal hearing shall be conducted by a judge or by a mental health review officer[.]" 50 P.S. § 7303(b). In this case, within twenty-four hours, on July 14, 2009, mental health review officer Joseph McGrory held a hearing, where Appellant was represented by a public defender, Gina Mattaliano, Esquire. Thus, § 7303(b) was satisfied.

Prior to the hearing for extended involuntary treatment, the public defender was able to speak to the doctor who completed the petition for extended involuntary inpatient treatment and had the doctor change his

_____

[5] On appeal, Appellant contests that there is a factual basis for the findings that he was served a copy of the § 7303 petition and that the mental health court coordinator at Norristown Hospital explained it to him. However, at the hearing on Appellant's Petition and Amended Petition, the trial court was informed about these events. N.T. Hearing, 1/8/14, at 19 ("Not only was [Appellant] served with a copy of the [7]303 petition, just so that we are clear, but it was also explained to him by the mental health court coordinator who is also present here today."). Appellant did not challenge the accuracy of this representation.

- 18 -

recommendation from inpatient to outpatient treatment. N.T. Hearing, 1/8/14, at 34. A transcript of the hearing before the mental health review officer is contained in the record. At that July 14, 2009 hearing, the mental health review officer ordered extended treatment consisting of twenty days of outpatient treatment. Appellant agreed to twenty days of outpatient treatment and said that he understood that he had to appear for doctor appointments, take his medication, and comply with his treatment plan. Appellant's lawyer reported that she had explained Appellant's rights to him and that he understood them. Appellant stipulated that the contents of the § 7303 petition were sufficient to enter an order for extended involuntary treatment. A doctor testified that Appellant was mentally ill as defined by the MHPA, that Appellant had committed behavior satisfying the mandates of § 7301, and that the behavior would continue if Appellant was not afforded treatment.

We now examine certain factual assertions made by Appellant in his petitions that were subsequently disproven. Appellant claimed that he arrived at the mental health facility at midnight and that Dr. Kurri's examination was not held within two hours. Petition, 8/16/13, at ¶¶ 10, 14, 16. However, Appellant later acknowledged that Dr. Kurri's notes stated both that Appellant arrived at the facility at 12:45 a.m. on July 11, 2009, and that the examination transpired at 1:40 a.m. Memorandum in Support of Petition and Amended Petition, 2/6/14, at 8.

Appellant also alleged that he did not remember Dr. Jordan Santina's § 7303 examination on July 13, 2009. Amended Petition, 12/4/13, at ¶ 27. Documents of record filed by Appellant himself establish that the examination did occur. Memorandum in Support of Petition and Amended Petition, 2/6/14, at Exhibit D, page 3. Finally, Appellant maintained that he did not attend a § 7303 involuntary commitment hearing, had no notice that one would occur, and no § 7303 hearing transpired. Petition, 8/16/13, at ¶ 27-29. The record substantiates that Appellant received both a copy of a § 7303 petition and that its contents were explained to him. Additionally, the record contains a transcript of Appellant's § 7303 hearing, where Appellant was present with counsel.

Appellant's rambling argument suggests his due process rights were violated. Those rights would have been violated had the procedures of the MHPA not been followed. All of Appellant's claimed violations of the MHPA were disproven. Since each mandate of the MHPA was satisfied in this case, we reject Appellant's position that he was denied due process and that the proceedings were void *ab initio*. Concomitantly, we find unavailing Appellant's reliance on cases involving that factual scenario. *See Wolfe v. Beal*, 384 A.2d 1187 (Pa. 1978) (once trial court determined that commitment proceeding violated Wolfe's due to process rights and was null and void, Wolfe was entitled to destruction of the hospital records of her mental health commitment); *In re Ryan*, *supra* (where procedures outlined

in MHPA were not followed, Ryan could obtain expungement of his mental health commitment records); *Commonwealth v. C.B.*, 452 A.2d 1372 (Pa.Super. 1982) (C.B. was not given copy of a petition three days in advance of hearing held pursuant to § 7304 (relating to court-ordered involuntary treatment not to exceed ninety days), as required by MHPA; C.B. was entitled to expungement of all records of commitment).

Since there were no procedural defects affecting notice or due process rights herein, Appellant cannot avoid the time limitations for taking an appeal based upon cases failing to apply time limitations on appeals due to these types of irregularities. *See Glen-Gery Corp. v. Zoning Hearing Bd. of Dover Tp.*, 907 A.2d 1033, 1035 (Pa. 2006) (finding that "a claim alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought notwithstanding" the time limitations for challenging ordinances), *superseded by statute as stated in*, *Messina v. East Penn Tp.*, 995 A.2d 517 (Pa.Cmwlth. 2010). We thus reject Appellant's position that § 5571 cannot be applied herein under "Pennsylvania Appellate Court's consistent decisions that the Mental Health Act procedural violations and denial of constitutional due process are never moot and must be reviewed by the Court." Appellant's brief at 28.

We are aware that *Wolfe*, which solely related to procedural due process violations, has subsequently been expanded to permit merits review of whether the evidence presented during a MHPA proceeding was sufficient

to find that a person was in need of involuntary treatment under the MHPA. *See In re R.F.*, 914 A.2d 907 (Pa.Super. 2006). However, we concur with the trial court's assessment that Appellant has waived merits review of the sufficiency of the evidence supporting that he was in need of extended involuntary emergency treatment under § 7303. Specifically, Appellant stipulated that the contents of the § 7303 petition were sufficient to establish that he was in need of extended involuntary treatment.

Appellant also complains that enforcement of a thirty-day time limit for seeking direct review of the MHPA proceedings deprives him of "any court review of the Mental Health Officer's certification, even though the certification effects, stigma, loss of employment opportunities, placement in data bases as a mentally ill person and deprivation of Second Amendment rights, continue without any avenue of relief." *Id*. The fault in this regard, however, is attributable to Appellant. Appellant was given a copy of the § 7303 petition and its assertions were explained to him. The transcript of the proceeding before the mental health review officer establishes that he was present at that proceeding and stipulated that he was in need of extended involuntary mental health treatment. A doctor opined that Appellant was mentally ill. As of that date, Appellant was aware that he was found mentally ill, would be stigmatized, and may lose employment opportunities. Likewise, he was aware of counsel's performance at that hearing. He was informed of his rights, which, at that point, were limited to

an appeal of the § 7303 finding and assistance of counsel during that appeal. He failed to take any action at that time.

We address issue four rather than issue two at this juncture since they are related. Specifically, Appellant's fourth contention is that he should have been accorded the right to appeal *nunc pro tunc*. Our standard of review in this context is deferential and "denial of an appeal *nunc pro tunc* is within the discretion of the trial court, and we will only reverse for an abuse of that discretion." ***Vietri ex rel. Vietri v. Delaware Valley High School***, 63 A.3d 1281, 1284 (Pa.Super. 2013). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, or ill will." ***Id***. (citation omitted).

An allowance of appeal *nunc pro tunc* is permitted when there was fraud or a breakdown in the operations of the court. ***Id***. Additionally, "*nunc pro tunc* relief may also be granted where the appellant demonstrates that "(1) his notice of appeal was filed late as a result of nonnegligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) he filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay." ***Id***. (citation omitted).

In this case, Appellant first argues that a *nunc pro tunc* appeal should be granted in light of the evidence that the §§ 7302 and 7303 commitments

were illegal since he was not mentally ill and counsel was ineffective for permitting him to stipulate that he was mentally ill. These positions do not pertain to fraud or breakdown in the court's operation. They likewise fail to indicate that counsel was going to file an appeal but failed to do so due to non-negligent circumstances. If we assumed, for the sake of argument, that the appeal was not filed due to non-negligent conduct by counsel, Appellant still failed to establish the second and third aspects for obtaining *nunc pro tunc* relief in that context. Specifically, he did not file the notice of appeal shortly after the expiration date. Additionally, Appellee asserted prejudice by the delay. At the hearing held, Appellee specifically maintained that it would be prejudiced by allowance of a direct appeal due to the passage of time and the fact that memories had faded regarding events occurring, by that time, four and one-half years beforehand. N.T. Hearing, 1/8/14, at 26. It continued, "There's a reason why we put time limits on appellate procedures. It's because it's supposed to be fair and balanced to both sides." *Id*. Hence, this argument does not entitled Appellant to a *nunc pro tunc* appeal.

Appellant also claims that he was not advised of his right to appeal. This position pertains to a fraud or breakdown in the operations of the proceeding and would warrant the grant of *nunc pro tunc* relief. However, the record, *i.e.*, the transcript of the hearing held on July 14, 2009 before the mental health review officer, belies Appellant's factual assertion.

Appellant's attorney stated that she had explained Appellant's rights to him. At that point, Appellant's rights consisted of continued representation by counsel and to petition for review in the court of common pleas under § 7303(g). *See* 50 Pa.C.S. § 7303(d).[6] Appellant provides no authority for the proposition that the mental health review officer could not rely upon counsel to inform Appellant of his right to obtain review of the commitment

_____

[6] That section states:

> **(d) Contents of Certification.**--A certification for extended involuntary treatment shall be made in writing upon a form adopted by the department and shall include:
>
> > (1) findings by the judge or mental health review officer as to the reasons that extended involuntary emergency treatment is necessary;
> >
> > (2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing;
> >
> > (3) any documents required by the provisions of section 302;
> >
> > (4) the application as filed pursuant to section 303(a);
> >
> > (5) a statement that the person is represented by counsel; and
> >
> > (6) an explanation of the effect of the certification, **the person's right to petition the court for release under subsection (g), and the continuing right to be represented by counsel**.

50 Pa.C.S. § 7303(d)(emphasis added).

in the court of common pleas and to have the assistance of counsel in connection with that review.

Appellant observes that he was entitled to effective assistance of counsel. In this respect, he relies upon *In re Hutchinson*, 454 A.2d 1008, 1010 (Pa. 1982). Hutchinson was involuntarily committed to a state hospital for ninety days under § 7304, which permits court-ordered involuntary treatment for a period not to exceed ninety days. At the hearing before the court of common pleas on the § 7304 petition, it was established through the use of hearsay proof that Hutchinson struck and threatened to kill relatives and thus that she was a danger to others. Hutchinson denied those averments and claimed that the relatives in question had a motive to fabricate the charges. The court ordered her to be committed involuntarily to the state hospital under § 7304 for ninety days.

Hutchinson obtained new counsel and filed a timely direct appeal to this Court. We concluded that counsel was ineffective for failing to object to the proof that Hutchinson was dangerous based upon hearsay when Hutchinson denied the veracity of the allegations. Our Supreme Court affirmed that ruling. It held that a patient in a MHPA proceeding is entitled to effective assistance of counsel and determined that trial counsel was ineffective for failing to object to the proof for the need of a ninety-day term of involuntary inpatient treatment through the use of challenged hearsay. It then remanded for the conduct of another hearing.

In that case, ineffective assistance of counsel was raised in a timely direct appeal. Appellant herein invokes ineffective assistance of counsel to collaterally attack a MHPA proceeding held years ago. He seeks the benefit of a ruling pertaining to matters involving an adjudication of delinquency in a juvenile case. *See In Interest of A.P.*, 617 A.2d 764 (Pa.Super. 1992) (granting of *nunc pro tunc* appeal from juvenile court's dispositional ruling based upon counsel's ineffectiveness); *Matter of Smith*, 573 A.2d 1077 (Pa.Super. 1990) (noting that juvenile, in a delinquency proceeding, has same right to counsel as an adult in a criminal prosecution). There is no support for Appellant's position that ineffective assistance of counsel is grounds for an appeal *nunc pro tunc* in civil setting, and, as outlined above, Appellant waived any position that he could pursue post-conviction relief based upon the fact that MHPA proceedings are quasi-criminal in nature.

We now address Appellant's second position, which involves his claimed right to expungement. "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." *In re: Vencil*, 120 A.3d 1028, 1032 (Pa.Super. 2015) (citation omitted). In seeking expungement, Appellant relies upon statutory language in 18 Pa.S.C. § 6111.1(g)(2):

**(g) Review by court.--**

(1) Upon receipt of a copy of the order of a court of competent jurisdiction which vacates a final order or an involuntary certification issued by a mental health review officer,

the Pennsylvania State Police shall, after disclosing relevant records under subsection (f)(3), expunge all records of the involuntary treatment received under subsection (f).

(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

(3) The Pennsylvania State Police, after disclosing relevant records under subsection (f)(3), shall expunge all records of an involuntary commitment of an individual who is discharged from a mental health facility based upon the initial review by the physician occurring within two hours of arrival under section 302(b) of the Mental Health Procedures Act and the physician's determination that no severe mental disability existed pursuant to section 302(b) of the Mental Health Procedures Act. The physician shall provide signed confirmation of the determination of the lack of severe mental disability following the initial examination under section 302(b) of the Mental Health Procedures Act to the Pennsylvania State Police.

18 Pa.C.S. § 6111.1(g).

The first subpart of (g) allows for expungement if the police receive a copy of a court order reversing a mental health review officer's determination that a person should be subject to involuntarily commitment; it clearly does not apply herein since no court overturned Appellant's extended involuntary commitment. The second and third subparts of § 6111.1(g) apply to § 7302 commitments. **See In re Vencil**, **supra** (expunging record of § 7302 commitment where evidence was insufficient to

support a finding that Vencil was severely mentally disabled as a result of mental illness).

There is binding precedent on the question presently before this panel. In *In re Jacobs*, 15 A.3d 509 (Pa.Super. 2011), Jacobs was involuntarily committed under § 7302, and Jacob's medical provider obtained extended involuntary commitment under § 7303. We ruled that § 6111.1(g) did not provide for expunction, stating "18 Pa.C.S. § 6111.1(g) provides no opportunity to obtain expunction of mental health records pursuant to a commitment under § 7303. This undoubtedly reflects the fact that commitment under § 7303 indicates a more serious mental problem, and the fact that commitment under § 7302 only requires a doctor's determination, while commitment under § 7303 imposes major due process requirements." *Id*. at 511. We noted in *Jacobs* that the appellant "had the opportunity in 2004 [when the involuntary treatment proceeding was held] to appeal his commitment under § 7303, and he chose not to do so." *Id.* We continued, "The lower court had no jurisdiction under 18 Pa.C.S. § 6111.1(g) to review appellant's commitment under § 7303. That statute only imbues the lower court with jurisdiction to review commitments under § 7302." *Id*.

This Court subsequently applied *Jacobs* in *In re Keyes*, 83 A.3d 1016 (Pa.Super. 2013), noting therein that § 6111.1(g) provides no mechanism for expungement of a § 7303 extended involuntary emergency treatment certified by a mental health review officer if the § 7303 ruling was not

- 29 -

vacated by the court of common pleas. Since Appellant's commitment was a § 7303 involuntary commitment proceeding certified by a mental health review officer and was not vacated by court order, § 6111.1(g) does not provide an avenue for relief.

Appellant attempts to distinguish the holding in ***Keyes*** as to his ability to obtain expunction under § 6111.1 by conflating it with ***Keyes'*** interpretation of § 6105. Appellant "contends that the Lower court failed to properly read the ***Keyes*** case wherein this Superior Court set forth the provisions of 18 Pa.C.S.A. § 6105(c)(4)." Appellant's brief at 34. He notes that he was never committed for inpatient treatment under "§ [7]303 of the MHPA and is not precluded under the provisions of gun ownership by § [7]303." Appellant's brief at 35. However, Appellant cannot own a gun due to his inpatient § **7302** treatment. Specifically, 18 Pa.C.S. § 6105 outlines who may not possess, use, manufacture, control, sell or transfer firearms. Included among those prohibited persons is anyone

> who has been adjudicated as an incompetent or who has been **involuntarily committed to a mental institution for inpatient care and treatment under section 302**, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

18 Pa.C.S. § 6105(c)(4) (emphasis added).

Appellant also suggests that the **Keyes** court's analysis of the right to expungement under § 6111.1(g) is inapplicable herein because he was not subjected to inpatient treatment in the § 7303 proceeding. Appellant's reading of the **Keyes** decision is misguided. Keyes sought expunction under 18 Pa.C.S. § 6111.1(b) and § 18 Pa.C.S. § 6105. Our discussion of those positions were quite distinct and directly applicable herein. We held: "18 Pa.C.S.A. § 6111.1(g) provides no opportunity to obtain expunction of mental health records pursuant to a commitment under § 7303." **Keyes**, **supra** at 1020. This statement was not dependent upon whether the extended involuntary treatment was inpatient or outpatient; it mattered only that it was extended involuntary treatment under § 7303, which is the case herein. Our holding as to § 6105 was equally clear. We outlined that nothing in 18 Pa.C.S. § 6105 "imbued the lower court with authority to expunge his record of involuntary commitments under the MHPA." **Id**. at 1022.

Thus Appellant cannot obtain expunction herein based upon the fact that his § 7303 treatment was outpatient rather than inpatient. In this case, a psychiatrist concluded that Appellant was in need of extended involuntary inpatient mental health treatment and petitioned for the same. Appellant's counsel requested that the treatment be accorded on an outpatient basis, and the doctor assented to that method of remediation. Appellant is entitled to no relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/20/2015</u>