J-S20034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCOIS HENDERSON | : | |
| | : | |
| Appellant | : | No. 280 MDA 2021 |

Appeal from the PCRA Order Entered December 1, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004125-2010

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: AUGUST 12, 2021**

Francois Henderson ("Henderson") appeals, *pro se*, from the Order dismissing his Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. Additionally, Henderson has filed an Application for Relief, requesting that his appellate rights be reinstated, *nunc pro tunc*. We affirm in part and vacate in part, and remand with instructions.

On the evening of August 26, 2007, Chauncey Pringle ("Pringle") and Latoya Aponte ("Aponte") were watching television in Aponte's apartment at the Bookbindery Apartments in Reading, Berks County, Pennsylvania. David Troy Johnson ("Johnson") called Aponte several times and asked whether Pringle was present in the apartment with her. Aponte met with Johnson

outside of the apartment complex and attempted to persuade Johnson to leave the area. Shortly thereafter, Aponte returned to her apartment.

At approximately 9:00 p.m., after the television show had ended, Pringle and Aponte left the apartment complex. Johnson and an individual known as "Rose," later identified as Henderson, were sitting on a nearby bench. Johnson and Henderson began exchanging looks with each other. Henderson got up from his seated position and began edging around a parked car in Pringle's direction. As Henderson got within a few feet of Pringle, he pulled out a gun and aimed it at Pringle. Pringle put his hands up and began to retreat away from Henderson. As Aponte ran back into her apartment building, she heard several gunshots. Aponte did not see who fired a gun, or if anyone had been shot.

At approximately 11:30 p.m., Reading City Police responded to the scene and discovered Pringle lying unresponsive in the middle of North Fourth Street. Pringle was transported to Reading Hospital, where he was pronounced dead at 12:10 a.m. on August 27, 2007. Police recovered approximately $68,900.00, three cell phones, a Ruger P90 handgun from Pringle's body, as well as several bullet casings and projectiles from the parking lot of the Bookbindery Apartments. An autopsy revealed that Pringle's cause of death was a perforation or bifurcation of the aorta due to a gunshot wound in the abdomen.

On August 28, 2007, Henderson was arrested, at which time police recovered, *inter alia*, a .45 caliber semi-automatic Sig Sauer handgun and several additional .45 caliber rounds. On December 4, 2007, Johnson was arrested, and police recovered, *inter alia*, a Heckler & Koch .45 caliber semi-automatic handgun and a loaded magazine of .45 caliber rounds.[1]

The PCRA court summarized the relevant procedural history as follows:

On September 8, 2011, [Henderson], following a [jury] trial, was found guilty of Count Three (3) Murder in the Third Degree, Count Six (6) Firearms Not to Be Carried Without a License, Count Seven (7) Possession of Instruments of Crime, and Count Ten (10), Possession with Intent to Manufacture or Deliver.[2] On [] September 27, 2011, [Henderson] was sentenced to an aggregate term of twenty-eight[-]and[-]a[-]half (28½) [] to fifty-seven (57) years in a State Correctional Institut[ion ("SCI")]. On October 27, 2011, [Henderson] filed [a] [N]otice of appeal to [this Court,] which was quashed for failure to comply with Pa.R.A.P. 3517. [Henderson filed] a PCRA [P]etition [] on April 23, 2012[,] resulting in the reinstatement of appellate rights. On March 18, 2013[,] a timely [N]otice of appeal was filed and on January 31, 2014, [this Court] affirmed [Henderson]'s sentence. [**Commonwealth v. Henderson**, 96 A.3d 1097 (Pa. Super. 2014) (unpublished memorandum)]. On October 24, 2014, [Henderson] filed a *pro se* PCRA [P]etition … [which, on March 22, 2017,] was granted and post[-]sentence rights were granted *nunc pro tunc*. On August 2, 2017, the post[-]sentence [Motion] was denied and a direct appeal was filed. On May 31, 2018, the judgment of sentence was affirmed by [this Court]. [**Commonwealth v. Henderson**, 192 A.3d 289 (Pa. Super. 2018) (unpublished memorandum)]. A [P]etition for allowance of appeal was denied by the Supreme Court of Pennsylvania on October 17, 2018. [**See id.**, **appeal denied**, 196 A.3d 126 (Pa. 2018).] [Henderson] filed [the instant] PCRA [P]etition on January 25, 2019[,] and counsel was appointed on April 15, 2019.

---

[1] Henderson and Johnson were tried separately.

[2] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 907(b); 35 P.S. § 780-113(a)(30).

On March 19, 2020, PCRA counsel filed a timely No[-]Merit Letter and [P]etition to [W]ithdraw from representation pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1998) [(*en banc*)] and **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998). PCRA counsel reviewed the entire official file including, but was not limited to, reviewing the pertinent notes of testimony including *voir dire*. PCRA counsel also communicated with [Henderson] regarding the matters herein. PCRA counsel served [Henderson] a copy of th[e] [N]o-[M]erit [L]etter, as well as a statement advising him of his rights[.].

PCRA Court Order and Notice of Intent to Dismiss, 5/7/20, at 1-2 (unnumbered) (footnote added).

On May 7, 2020, the PCRA court granted the Petition to Withdraw and issued Notice of its intent to dismiss Henderson's PCRA Petition pursuant to Pa.R.Crim.P. 907(1). Henderson proceeded *pro se* and requested additional time to respond to the PCRA court's Notice. The PCRA court granted Henderson additional time to respond, but ultimately, Henderson did not file a response. On December 4, 2020, the PCRA court dismissed Henderson's Petition.

Henderson, *pro se*, filed a facially untimely Notice of Appeal on January 6, 2021. Henderson enclosed a Letter[3] with his Notice of Appeal, in which he indicated that he had been prevented from filing a timely appeal due to limited availability of the law library at SCI Greene. On January 29, 2021, Henderson

---

[3] We note that this Letter, and the corresponding Notice of Appeal, were received by the Berks County Court of Common Pleas on January 6, 2021. However, the Letter is timestamped December 4, 2021, a date which has not yet occurred. Therefore, we consider the Letter as filed with the Notice of Appeal on January 6, 2021.

filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On April 5, 2021, this Court issued a Rule to Show Cause why Henderson's appeal should not be quashed as untimely filed. Henderson did not respond. Rather, on May 11, 2021, Henderson filed an Application for Relief, in which he requested a hearing regarding PCRA counsel's stewardship in filing the Petition to Withdraw and No-Merit Letter, as well as reinstatement of his appellate rights. This Court's Rule to Show Cause and Henderson's Application for Relief were ultimately referred to the merits panel.

At the outset, we must address the procedural posture of Henderson's facially untimely Notice of Appeal. We treat Henderson's Letter, attached to his Notice of Appeal, as an Application for *nunc pro tunc* relief to permit his late filing of his Notice of Appeal. ***See Towey v. Lebow***, 980 A.2d 142, 144 (Pa. Super. 2009) (providing that both trial and appellate courts have jurisdiction to determine whether an appeal *nunc pro tunc* should be granted). "Even when a party has filed an untimely notice of appeal, … appellate courts may grant a party equitable relief in the form of an appeal *nunc pro tunc* in certain extraordinary circumstances," including non-negligent circumstances related to the appellant or his counsel. ***Criss v. Wise***, 781 A.2d 1156, 1159 (Pa. 2001). To file an appeal *nunc pro tunc* on these grounds, the appellant must show that (1) the appeal was filed late as a result of non-negligent circumstances relating to the appellant or his counsel; (2) the notice of appeal

- 5 -

was filed shortly after the expiration date; and (3) the appellee was not prejudiced by the delay. *Id.*; *see also Vietrie ex rel. Vietri v. Del. Valley High Sch.*, 63 A.3d 1281, 1284 (Pa. Super. 2013).

Instantly, Henderson has asserted that he was prevented from filing his Notice of Appeal in a timely manner due to shutdowns at SCI Greene, as a result of the rapid spread of COVID-19 throughout Department of Corrections facilities. *See* Letter, 1/6/21, at 1. Henderson included two memos from the Secretary of Corrections, that closed or limited access to, *inter alia*, the law library from approximately December 10, 2020, until January 4, 2021. *Id.* at 2-3. Henderson's Notice of Appeal was dated January 6, 2021—two days after the limited access to the law library ended, which is in accordance with his explanation that he could not access the law library—and the Notice of Appeal was received by the trial court for filing the same day. Finally, we note that the Commonwealth has not disputed the non-negligent circumstances related to Henderson's late filing of the Notice of Appeal, nor has it alleged that it has suffered any prejudice. Therefore, we conclude that Henderson is entitled to *nunc pro tunc* relief, and we proceed to a review of his appeal from the dismissal of his PCRA Petition.[4]

Henderson raises the following claims for our review:

---

[4] Based upon the foregoing, we deny Henderson's May 11, 2021, Application for Relief as moot.

1. Whether trial counsel … was ineffective for failing to object to jurors reviewing said evidence (Letter)[5] during jury deliberations[?]

2. Whether [the] A[ssistant] D[istrict] A[ttorney] … committed [p]rosecutorial [m]isconduct during jury deliberation when refusing to let prosecutive jurors [*sic*] to review evidence (Letter) that were [*sic*] introduced into evidence during trial proceedings[?]

3. Whether the [trial court] violated [Henderson]'s [c]onstitutional [r]ights to a fair trial when refusing to allow jurors to review evidence (Letter) during deliberations in order to make a proper determination of guilt or innocence[?]

4. Whether [Henderson]'s sentence to a mandatory minimum was a[n] illegal sentence[?]

Brief for Appellant at 4 (unnumbered) (footnote added).

We review an order [dismissing] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

---

[5] We note that the "Letter" Henderson references was allegedly written by Johnson, and was admitted at trial as Commonwealth Exhibit 37.

In his first claim, Henderson contends that his trial counsel rendered ineffective assistance by failing to object to the trial court's refusal to send Commonwealth Exhibit 37 to the jury during deliberations. Brief for Appellant at 6 (unnumbered). Henderson argues that the letter was written by Johnson, and that the contents of the letter would have compelled a different verdict. *Id.* (unnumbered)

Henderson has failed to develop this claim for our review. Henderson's argument is devoid of any citation to relevant legal authority or case law. *See* Pa.R.A.P. 2119(a) (requiring an appellant to support his argument with "such discussion and citation of authorities as are deemed pertinent."); *see also* *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Moreover, we observe that Henderson's one-paragraph argument is devoid of anything more than bald assertions of trial counsel's ineffectiveness. *See Commonwealth v. Paddy*, 14 A.3d 431, 443 (Pa. 2011) (providing that "boilerplate allegations and bald assertions … cannot satisfy a petitioner's burden to prove that counsel was ineffective."). Accordingly, Henderson's first claim is waived.

We will address Henderson's second and third claims together, as they are related. Henderson contends, in the alternative, that the Assistant District Attorney committed prosecutorial misconduct when he claimed that the

above-mentioned Letter could not go to the jury for deliberations. Brief for Appellant at 6 (unnumbered). Additionally, Henderson claims that the trial court erred when it failed to provide Commonwealth Exhibit 37 to the jury, despite the jury's "numerous" requests for it. *Id.* at 6-7 (unnumbered)

Initially, we observe that Henderson did not raise his second or third claims in his PCRA Petition. In particular, Henderson raised his second claim for the first time in his appellate brief, and Henderson's third claim first appeared in his Rule 1925(b) Concise Statement. It is well-settled that "issues not raised in a PCRA [p]etition cannot be considered on appeal." *Commonwealth v. Lauro*, 819 A.2d 100, 103 (Pa. Super. 2003) (citation omitted); *see also Commonwealth v. Williams*, 900 A.2d 906, 909 (Pa. Super. 2006) (stating that "including an issue in a [Rule 1925(b)] Concise Statement does not revive issues that were waived in earlier proceedings"); Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, Henderson's second and third claims are waived.[6]

In his fourth claim, Henderson claims that he was subject to an illegal mandatory minimum sentence pursuant to *United States v. Alleyne*, 540

---

[6] We note that these claims are also waived because Henderson has failed to adequately develop these claims for our review. *See* Pa.R.A.P. 2119(a); *see also Johnson*, *supra*. In his brief, Henderson baldly asserts that the trial court erred, and the Assistant District Attorney committed prosecutorial misconduct. Brief for Appellant at 6-7 (unnumbered). However, Henderson does not cite to any relevant case law or authorities supporting his position.

U.S. 1 (2013). Brief for Appellant at 7 (unnumbered). Henderson contends that the PCRA court erred in determining that this claim lacks merit. ***Id.*** In particular, Henderson argues that ***Alleyne*** applies retroactively in his case, because his *nunc pro tunc* direct appeal was still pending at the time ***Alleyne*** was decided. Brief for Appellant at 7 (unnumbered).

As long as this Court has jurisdiction over a matter, a legality of sentencing issue is reviewable and cannot be waived. ***Commonwealth v. Jones***, 932 A.2d 179, 182 (Pa. Super. 2007); ***See Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) (stating that a "challenge to a sentence premised upon ***Alleyne*** … implicates the legality of the sentence," and such a challenge cannot be waived); ***see also Commonwealth v. Beck***, 848 A.2d 987, 989 (Pa. Super. 2004) (stating that "[i]ssues concerning the legality of sentence are cognizable under the PCRA.").

This Court has previously stated that ***Alleyne*** applies retroactively to cases pending on direct appeal as of June 27, 2013. ***See Newman***, 99 A.3d at 90; ***see also Commonwealth v. Ruiz***, 131 A.3d 54, 59-60 (Pa. Super. 2015) (stating that, if a defendant's direct appeal was pending when ***Alleyne*** was decided, the defendant is entitled to relief pursuant to a timely PCRA petition since an ***Alleyne*** claim is a non-waivable challenge to the legality of sentence, which is cognizable under the PCRA).

In its Opinion, the PCRA court addressed Henderson's claim as follows:

> A mandatory minimum was utilized in [Henderson]'s sentencing hearing at Count Ten (10) for [p]ossession with the

intent to deliver drugs[,] where a five (5) to ten (10) year sentence was imposed. While many, but not all, of the mandatory minimum sentencing provisions were found to be unconstitutional, relief cannot be granted **on collateral review** without the right being applied retroactively. The Pennsylvania Supreme Court squarely laid to rest the latter question by ruling that ***Alleyne*** is not retroactive….

PCRA Court Opinion, 5/7/20, at 6 (unnumbered) (emphasis added).

Our review of the record reveals that on April 23, 2012, Henderson filed a PCRA Petition in which he requested that his direct appeal rights be reinstated, *nunc pro tunc*. The PCRA court agreed, and reinstated Henderson's direct appeal rights. Accordingly, on March 18, 2013, Henderson filed a *nunc pro tunc* direct appeal with this Court. During the pendency of this direct appeal, the United States Supreme Court decided ***Alleyne***. ***See Alleyne***, ***supra***. On January 31, 2014, this Court affirmed Henderson's judgment of sentence. ***See Henderson***, 96 A.3d 1097 (unpublished memorandum).

Next, on October 24, 2014, Henderson filed another PCRA Petition in which he requested that his post-sentence rights and direct appeal rights be reinstated *nunc pro tunc*. Again, the PCRA court agreed, and reinstated Henderson's rights *nunc pro tunc*. Accordingly, on August 2, 2017, Henderson filed a *nunc pro tunc* Post-Sentence Motion. The trial court denied Henderson's Post-Sentence Motion, and Henderson filed a *nunc pro tunc* direct appeal with this Court. On May 31, 2018, this Court affirmed Henderson's judgment of sentence, and on October 17, 2018, the Pennsylvania Supreme

Court denied review. *See Henderson*, 192 A.3d 289 (unpublished memorandum), *appeal denied*, 196 A.3d 126.

On January 25, 2019, after Henderson's direct appeal had concluded and his judgment of sentence became final, Henderson filed the instant PCRA Petition. *See Commonwealth v. Figueroa* 29 A.3d 1177, 1181 (Pa. Super. 2011) (stating that "a PCRA petition brought after an appeal *nunc pro tunc* is considered [to be an] appellant's *first* PCRA Petition.") (emphasis added). Accordingly, the instant PCRA Petition is the *first* Petition in which Henderson could raise his illegal sentence claim pursuant to *Alleyne*.

Thus, the record confirms that Henderson's direct appeal was pending from approximately March 2013, until October 2018. Pursuant to this Court's decisions in *Newman* and *Ruiz*, the *Alleyne* decision applies retroactively to Henderson's case. *See Newman*, *supra*; *Ruiz*, *supra*. Accordingly, the PCRA court erred in determining that *Alleyne* did not apply retroactively to Henderson's case, and we vacate the PCRA court's Order as to Henderson's challenge to the legality of his sentence. *See Ford*, *supra*; *Newman*, *supra*.

Based upon the foregoing, we affirm in part and vacate in part the PCRA court's Order dismissing Henderson's PCRA Petition. Additionally, we direct the PCRA court to appoint Henderson new counsel to address Henderson's *Alleyne* claim, in light of this Court's decisions in *Newman* and *Ruiz*.

Order affirmed in part and vacated in part. Case remanded with instructions. Application for Relief denied as moot. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/12/2021