Christian VIETRI, Jr., A Minor, By his Parents and Natural Guardians, Christian Vietri, Sr., and Lisa Vietri

v.

DELAWARE VALLEY HIGH SCHOOL, Michael Delquadro, Marc Delquadro, Antoinette Delquadro, Ryan Long, Colleen M. Long, Spencer Stafford, Thomas Stafford, and Kathleen Contrevo.

Appeal of Christian Vietri, Jr.

Superior Court of Pennsylvania.

Submitted Oct. 22, 2012.

Filed March 22, 2013.

Raymond M. Bily, Philadelphia, for appellant.

Matthew C. Wilson and Kimberly A. Boyer–Cohen, Philadelphia, for Delaware Valley HS, appellee.

John F. Kent, Philadelphia, for Delquadro, appellees.

Hugh A. Donaghue, Media, for Long, appellees.

Mitchell S. Berger, Philadelphia, for Stafford and Contrevo, appellees.

BEFORE: PANELLA, J., LAZARUS, J., and WECHT, J.

OPINION BY WECHT, J.:

Christian Vietri, Jr., a minor ("Appellant"), by his parents Christian Vietri, Sr., and Lisa Vietri, appeals the trial court's order of January 27, 2012. That order denied Appellant's Motion for Appeal *Nunc Pro Tunc.* We reverse.

This case has followed a tortured path, responsibility for which is shared by Appellant, this Court, and the trial court. To resolve this case in its current posture, we need not relate the underlying facts or allegations. We need only recount the procedural history.

On August 3, 2010, the trial court granted summary judgment to Delaware Valley High School ("Appellee"). On June 8, 2011, the trial court approved a stipulation of dismissal of all defendants except Appellee. On June 17, 2011, Appellant filed a motion for post-trial relief. Only four days later, on June 21, 2011, Appellant filed a notice of appeal, which was docketed in this court at 1676 EDA 2011.

On August 5, 2011, this Court sent a letter to Appellant's counsel expressing concerns regarding this Court's jurisdiction. The letter stated:

> The appeal you have taken from the trial court's June 8, 2011 order may be premature because it appears that post-trial motions filed on June 17, 2011 remain outstanding. *See Vance v. 46 and 2, Inc.*, 920 A.2d 202 (Pa.Super.2007) (appeal to Superior Court can only lie from judgments entered subsequent to trial court's disposition of post-verdict motions).
>
> Please respond by letter within ten days of this letter as to the basis of the Superior Court's jurisdiction over this matter. If the court has no jurisdiction it must dismiss this appeal. *See Pa. R.A.P. 341, 741(b).*

Letter, Superior Court Central Legal Staff to Raymond M. Bily, Esquire, 8/5/2011. Appellant did not respond to this Court's request for a showing of jurisdiction.

Instead, as averred by affidavit, Appellant's counsel contacted the trial court and

requested that the court adjudicate Appellant's outstanding post-trial motion. Appellant's Petition to Appeal Nunc Pro Tunc, Exh. B, Affidavit of Counsel ("Bily Affidavit") (averring that, "[o]n or about August 8, 2011, Raymond M. Bily attorney *[sic]* notified the chambers of Judge Joseph Papalini ... advising Court personnel that he received [the August 5, 2011 letter from this Court] inquiring about a pending post trial motion. [Counsel] further states that the matter would be brought before the Judge for action and an Order disposing of the post trial motion would issue"). However, on August 19, 2011, before any further trial court action, and fourteen days after this Court's letter regarding our jurisdiction, we quashed Appellant's appeal. Our *per curiam* order stated:

> This appeal has been taken following the trial court's June 8, 2011[ ] order granting the parties['] stipulation of dismissal. The trial court docket indicates that a motion for post-trial relief was filed on June 17, 2011[,] and remains pending in the trial court.
>
> Pa.R.A.P. 341(b)(1) states: "A final order is any order that disposes of all claims and of all parties." *See Motorists Mut. Ins. Co. v. Pinkerton* [574 Pa. 333], 830 A.2d 958 (Pa.2003) (post-trial declaratory judgment orders, just like other post-trial orders, are subject to post-trial motion procedures); *Chalkey v. Roush* [569 Pa. 462], 805 A.2d 491 (Pa. 2002) (under Pa.R.C.P. 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party may wish to raise on appeal; trial court's order at conclusion of trial cannot become final for purposes of appeal until court decides any timely post-trial motions).
>
> Accordingly, the appeal at No. 1676 EDA 2011 is hereby QUASHED.

Superior Court Order, 8/19/2011 *(per curiam)* (citations modified).

On August 30, 2011, the trial court denied Appellant's ostensibly still-pending post-trial motion. One day later, on August 31, 2011, Appellant filed a notice of appeal that was docketed at 2485 EDA 2011. On October 5, 2011, Appellee filed an Application to Quash Appeal asserting that Appellant's notice of appeal was untimely. Appellant filed his answer to same. On November 29, 2011, this Court granted Appellee's petition. In our order granting the petition, however, we specified that the order was "without prejudice to appellant['s] right to seek nunc pro tunc relief in the trial court." Superior Court Order, 11/29/2011 *(per curiam).*

On or about December 19, 2011, Appellant filed a Petition for Appeal Nunc Pro Tunc in the trial court. Appellee opposed the petition. On January 30, 2012, the trial court filed its order denying Appellant's request for restoration *nunc pro tunc* of his right to file a direct appeal from the underlying denial of summary judgment. This appeal followed.

Before this Court, Appellant presents the following three issues for appeal:

1. Whether the lower court committed error as a matter of law or abused its discretion in denying Appellant['s] Petition for Appeal Nunc Pro Tunc where an appeal had been timely filed but later dismissed by the Superior Court due to a docket entry reflecting the pending disposition of post-trial motions filed by Appellant[, which,] as a matter of law and fact[,] the lower court lacked subject matter jurisdiction to decide.

2. [Is Appellant] entitled to an Appeal Nunc Pro Tunc where the lower court docket entry reflected a pending decision on Appellant['s] improv-

idently filed post-trial motions where no trial had been conducted thereby depriving the lower court of subject matter jurisdiction as a matter of law and fact.

3. [Is Appellant] entitled to an [A]ppeal [N]unc [P]ro [T]unc where the lower court opinion in support of its denial thereof offers no basis whatsoever to support its decision and instead only reflects support for its grant of Summary Judgment, a decision originally subject to a timely appeal to the Superior Court.

Brief for Appellant at 3. These issues are of a piece. We address them in a unitary discussion.

Our Supreme Court has characterized the purpose of *nunc pro tunc* restoration of appellate rights as follows:

Allowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline. This Court has emphasized that the principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances. Generally, in civil cases an appeal *nunc pro tunc* is granted only where there was fraud or a breakdown in the court's operations through a default of its officers.

*Union Elec. Corp. v. Bd. Of Prop. Assessment, Appeals & Review of Allegheny Cty.,* 560 Pa. 481, 746 A.2d 581, 584 (2000) (citations and internal quotation marks omitted).

 Our standard of review over an order denying *nunc pro tunc* restoration of a petitioner's appellate rights is deferent:

The denial of an appeal nunc pro tunc is within the discretion of the trial court, and we will only reverse for an abuse of that discretion. *Freeman v. Bonner,*

761 A.2d 1193, 1194 (Pa.Super.2000). In addition to the occurrence of "fraud or breakdown in the court's operations," nunc pro tunc relief may also be granted where the appellant demonstrates that "(1) [his] notice of appeal was filed late as a result of nonnegligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) [he] filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay." *Criss v. Wise,* 566 Pa. 437, 781 A.2d 1156, 1159 (2001).

*Rothstein v. Polysciences, Inc.,* 853 A.2d 1072, 1075 (Pa.Super.2004) (citations modified). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, or ill will." *U.S. Bank N.A. v. Mallory,* 982 A.2d 986, 994 (Pa.Super.2009).

Appellant argues, in effect, that his post-trial motion, to which this Court attributed its own lack of jurisdiction, was improvidently filed, and that the trial court erred in not dismissing the motion *sua sponte.* Brief for Appellant at 7–8 (unpaginated). In this connection, Appellant emphasizes that the trial court was not without knowledge of the problem: following this Court's letter to Appellant, in which we questioned our jurisdiction, Appellant submits that he contacted the trial court to clarify the situation, and that the trial court did nothing. *Id.* at 8; *see also* Bily Affidavit, *supra.*

Appellee replies that none of the criteria for which *nunc pro tunc* relief may be granted are satisfied in this case. Brief for Appellee at 9–13. Appellee notes that the circumstance complained of by Appellant was precipitated by Appellant's own error in filing an undisputedly improvident post-trial motion. *Id.* at 10–11. Because fault lay with Appellant, the problem was a

consequence of neither fraud nor a breakdown in the court's operations. *Id.* at 12–13. Appellee argues, in effect, that the improvident filing that led this Court to quash the appeal was a product of Appellant's own negligence, thus precluding *nunc pro tunc* relief. Notably, Appellee does not argue before us that it would have been prejudiced had the trial court restored Appellant's appeal *nunc pro tunc.* Similarly, in the trial court, Appellee did not seek to establish any basis upon which prejudice might be found.

On both sides, the arguments are not without merit. Because considerations are presented that touch upon a number of the events that have occurred as this case has bounced between this Court and the trial court, it is incumbent upon us to keep in mind the narrow question upon which we must rule: Whether the trial court abused its discretion in denying *nunc pro tunc* relief. Events preceding that trial court decision provide only the circumstantial background against which we must answer the question.

■ Under these circumstances, there is no basis upon which we might find that the trial court abused its discretion by overriding or misapplying the law, or that it acted out of partiality, prejudice, or ill will. That leaves only the question of whether the trial court exercised "manifestly unreasonable" judgment. *See U.S. Bank, supra.* Unfortunately, we must speculate, because the trial court has provided no guidance as to its reasoning for denying Appellant's petition. This is an especially troubling omission in light of the fact that, in quashing Appellant's second attempt to appeal the trial court's ruling

and in remanding the case, we specified that our order should not be read to preclude Appellant's attempt to seek *nunc pro tunc* relief.[1] There is no indication that we did so idly or for form's sake. Appellee's motion to quash and Appellant's opposition to same amply informed us of the difficulties Appellant had encountered in diligently and promptly seeking appellate review, and indicated Appellant's own complicity in the confusion. Although we certainly did not direct the trial court to provide *nunc pro tunc* relief, the trial court had reason to recognize that, at a minimum, an explanation would be warranted for the denial of such relief.

Writing against that vacuum, in order to assess the reasonableness of the trial court's exercise of discretion, we must review the legal ramifications of the prior events in this case. We begin by noting what is obvious: Appellants' post-trial motion was improvidently filed. *See Bostick v. Schall's Brakes & Repairs, Inc.,* 725 A.2d 1232, 1236 (Pa.Super.1999) (holding that, "[l]ogically, post-trial motions may not be filed to orders disposing of pre-trial motions (i.e., orders disposing of ... motions for summary judgment ... )"). Moreover, our case law suggests that, in the context of final and appealable orders, including but not limited to orders entering summary judgment, a post-trial motion, being impermissible under the applicable rules of civil procedure, is a nullity. *See In re Ware,* 814 A.2d 725, 729–30 (Pa.Super.2002) (finding the pendency of exceptions filed by the appellant ineffective because the underlying decree was final and appealable as a matter of law); *Westinghouse Elec. Corp. (R & D Center) v.*

---

1. When we are denied the benefit of a trial court opinion explaining a challenged ruling, we have the prerogative to remand for a more illuminating explanation. However, given the considerable time that has elapsed while this case has been mired in post-summary-judg- ment proceedings, and given our view of the trial court's ruling, we do not believe the parties or the court will benefit from further delay in the resolution of this appeal. *See Sekol v. Delsantro,* 763 A.2d 405, 406 n. 1 (Pa.Super.2000).

*Board of Prop. Assessment, Appeals & Review,* 118 Pa.Cmwlth. 152, 544 A.2d 1088 (1988), *rev'd on other grounds sub nom Appeal of Borough of Churchill,* 525 Pa. 80, 575 A.2d 550 (1990) (reviewing tax assessment cases, wherein no exceptions or post-trial motions are permitted by rule, and concluding that "an application for post-trial relief under [Pa.R.C.P. 227.1] and any orders issued pursuant to such applications are nullities").

■ There also is Pennsylvania case law, albeit none that binds us,[2] suggesting that a trial court may treat an infirm post-trial motion as a motion for reconsideration. *City of Philadelphia v. Frempong,* 865 A.2d 314, 318 (Pa.Cmwlth.2005). Had we viewed Appellant's motion thusly when he filed his first notice of appeal, we would have been bound to conclude that we retained jurisdiction to consider the appeal, notwithstanding Appellant's motion. *See Valley Forge Center Assoc. v. Rib–It/K.P., Inc.,* 693 A.2d 242, 245 (Pa.Super.1997) ("[A]lthough a party may petition the court for reconsideration, the simultaneous filing of a notice of appeal is necessary to preserve appellate rights in the event that either the trial court fails to grant the petition expressly within 30 days, or denies the petition."); *id.* (citing Pa.R.A.P. 1701(b)(3), Cmt., which provides that "[t]he

better procedure under this rule will be for a party seeking reconsideration to file an application for reconsideration below and a notice of appeal, etc. If the application lacks merit, the trial court ... may deny [it] by the entry of an order to that effect or by inaction. The prior appeal paper will remain in effect...."). Both the Rules of Civil Procedure and the Rules of Appellate Procedure authorize the courts of common pleas and the appellate courts, respectively, to overlook "any error or defect of procedure which does not affect the substantial rights of the parties."[3] Pa. R.C.P. 127; *see* Pa.R.A.P. 107, Cmt. (providing that "the effect of [Pa.R.A.P. 107] is substantially the same as Pa.R.C.P. 76–153"); *accord Pomerantz v. Goldstein,* 479 Pa. 175, 387 A.2d 1280, 1281 (1978).

As noted above, our order quashing Appellant's first appeal cited the outstanding post-trial motion as precluding the finality in the trial court that is necessary to perfect our subject matter jurisdiction. We also cited two cases that putatively supported quashal. *See* Superior Court Order, 8/19/2011 *(per curiam)* (citing *Motorists Mut. Ins. Co. v. Pinkerton,* 574 Pa. 333, 830 A.2d 958 (2003); *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002)). However, both cases are clearly inapposite. Collectively, they stand for the proposition that post-trial motions **must** be

**2.** *See Beaston v. Ebersole,* 986 A.2d 876, 881 (Pa.Super.2009) (noting that, while Commonwealth Court cases do not bind this Court, we may follow those decisions when we find their rationale persuasive).

**3.** It cannot be gainsaid that post-trial motions and motions for reconsideration "are not interchangeable." *Karschner v. Karschner,* 703 A.2d 61, 62 n. 1 (Pa.Super.1997). Even were the trial court or this Court to exercise its discretion to overlook a procedural error of the sort presented here, we do not believe there is any question that a post-trial motion treated by the trial court as a motion for reconsideration would incur the procedural consequences that attach to a motion for re-

consideration, including that the filing of same does not toll the time period for the filing of an appeal. Rather, preserving the trial court's discretion in this regard merely protects the trial court's prerogative to review its own decision within thirty days after its issuance. *Id.* (citing *Gemini Equip. v. Pennsy Supply,* 407 Pa.Super. 404, 595 A.2d 1211 (1991), which this Court in *Karschner* described in a parenthetical as "reason[ing] that the purpose of both motion for reconsideration and post-trial motion was to have trial court review its decision," in ruling that appellant did not waive issues for appeal where motion for consideration was filed instead of post-trial motions).

filed in the circumstances presented by those cases, and thus are directly contrary to the central principle at issue in this case; to wit, that Appellant's post-trial motions were improvident. In this case, as set forth above, Appellant's post-trial motion necessarily either was a legal nullity over which the trial court lacked jurisdiction in the first instance, or it was in the nature of a motion for reconsideration, the pendency of which would not have precluded our jurisdiction over Appellant's appeal at the time of filing of the notice of appeal. In short, we arguably erred in our initial ruling; at a minimum, our briefly-stated reasoning, the cases we cited, and the parentheticals appended to those citations, rendered the order misleading.

Before the trial court, Appellant did not assert in his petition for *nunc pro tunc* relief that this Court erred. Nor does he do so presently, at least directly.[4] But he steadfastly has maintained that his post-trial motion was infirm and that this Court

in fact had jurisdiction over his appeal in the first instance. We find that this argument sufficiently called our ruling into question. Accordingly, in evaluating Appellant's petition for *nunc pro tunc* relief, it was incumbent upon the trial court to address Appellant's assertion that this Court had jurisdiction over his appeal in the first instance.[5]

We note that Appellant has, at all times, acted promptly in seeking to appeal the entry of summary judgment against him. He filed his first notice of appeal well within thirty-days of the stipulation of dismissal that rendered judgment final as to all issues and parties; on remand, he sought and received what appeared to be a ruling on his post-trial motion within eleven days, a ruling that this Court implied was necessary, inasmuch as the pending motion was the reason we cited for quashing Appellant's appeal.[6] Only one day thereafter, Appellant filed his second notice of appeal. Upon our quashal of same,

---

**4.** Similarly, Appellee never challenged the propriety of Appellant's post-trial motion, another means by which that motion's infirmity might have been discovered and acted upon before the expiration of Appellant's time to file appeal. Nor did Appellee respond in any way to this Court's inquiry, in connection with Appellant's first appeal, regarding the irregularity on the docket. While Appellee was under no obligation to do so in either context, this omission might nonetheless have been considered by the trial court in assessing the equities of Appellant's petition for *nunc pro tunc* relief.

**5.** At first blush, this may appear to be inconsistent with the obligation of the trial court to honor this Court's orders. However, considering problematic aspects of our order in determining whether Appellant was entitled to the equitable remedy of *nunc pro tunc* relief would not have put the trial court at odds with any order of this Court. Moreover, it would have been in keeping with our indication in our order quashing Appellant's second appeal that Appellant retained the right to seek such relief.

**6.** In this regard, we note that we effectively put Appellant in a bind. In implying that he was barred from appealing during the pendency of what we treated as his post-trial motion, we all but directed him to seek a ruling below. In effect, he followed our instructions to the letter. Although we did not say that doing so would perfect his appeal, that was certainly one implication of our order. We do not believe it is fair for this order to deprive Appellant of his right to appeal. *Cf. Burkhart v. Brockway Glass Co.*, 352 Pa.Super. 204, 507 A.2d 844, 846 (1986) (declining to find an appeal from an adverse summary judgment ruling untimely when the expiration of the time period was the result of counsel's compliance with the trial court's requirement that the aggrieved party file exceptions, despite its inconsistency with the Pennsylvania rule that a motion for summary judgment is a final and appealable order: "It would ... be callously unjust to penalize a litigant because her counsel complied with a rule of the forum.").

he sought *nunc pro tunc* relief approximately three weeks later. When that was denied, he once again promptly sought review in this Court. Put another way, after his initial error of filing post-trial motions from an adverse ruling on summary judgment, Appellant acted as an exemplary appellant working diligently to preserve his right to appellate review.

■ An additional consideration animates our ruling. We think it fair to assume that, had Appellant declined to seek our review until the trial court addressed his post-trial motion—whether on the merits, as it ultimately purported to do; by operation of law after 120 days[7]; or by dismissal, as Appellant maintains the trial court should have done—and had the thirty-day appeal period lapsed during the pendency of that motion, Appellee would have sought quashal for untimeliness. Under our clear precedent, we would have been constrained to quash the appeal. It is beyond cavil that a post-trial motion that is infirm—whether for untimeliness or other reasons—does not toll the time for appeal. *See Frempong*, 865 A.2d at 317–18 (holding appeal untimely because improvident post-trial motion from a final and appealable order did not toll the thirty-day time limit for filing an appeal). Moreover, had the trial court treated Appellant's post-trial motion as a motion for reconsideration, that filing also would not have tolled the time for appeal. *See Fingles v. Green*, 269 Pa.Super. 131, 409 A.2d 99, 101 (1979).

Although the precedent is not entirely apposite, we find guidance in this Court's decision in *In re Ware*. In that case, the appellant filed seven petitions for citation to show cause and action for declaratory judgment against the trustee of seven sizable trusts established for the appellant's

benefit, alleging that the trustee was required to make certain distributions from seven separate trusts. 814 A.2d at 729. Once the trial court entered its opinion and decree with respect to one of the petitions, the trustee filed exceptions and the appellant filed cross-exceptions. *Id.* However, before the trial court could rule on the exceptions, the trustee filed a notice of appeal as to all seven petitions. *Id.* Approximately a week after the trustee's notice of appeal, the trial court entered decrees on the remaining six petitions, noting its lack of awareness that the seven petitions had not been consolidated. *Id.* Approximately a week thereafter, the beneficiary filed a notice of cross-appeal. *Id.* Two weeks later, the trustee filed an amended notice of appeal encompassing the other six decrees. *Id.* Thus, with all seven decrees before this Court, the parties' exceptions to the trial court's ruling on the first decree remained pending in that court.

Addressing first the question of our jurisdiction, we observed that the appeals typically would be viewed as premature due to the pendency of the exceptions. *Id.* However, we noted that the decrees at bar were final and appealable orders, and, as such, were appealable without the filing of exceptions in the trial court. *Id.* Because these decrees were final and appealable, an aggrieved party was required to file a notice of appeal within thirty days. *Id.* at 730. We explained: "[I]f the parties to this action were to wait for determination of their Exceptions by the trial court, it is likely that their appeal would have been untimely." *Id.* Under the circumstances presented in that case, the parties' exceptions were deemed a nullity, and the appeals were found to be timely. Consequently, we found jurisdiction over

---

**7.** *See* Pa.R.C.P. 227.4(b); *Morningstar v. Hoban,* 819 A.2d 1191, 1195–96 (Pa.Super.2003).

the appeals and decided them on their merits.

Although we have found no case law that is entirely analogous to the instant appeal, we think that *Ware* stands for a principle that informs our inquiry. Under these peculiar circumstances, we can discern no reasonable basis upon which the trial court might have based its ruling denying Appellant *nunc pro tunc* relief. Moreover, given the trial court's silence as to its reason for denying relief, we will not impute one. Appellee was and has been, at all times, conscious of Appellant's desire to appeal the trial court's ruling. Nor does Appellee argue with any particularity before this Court that it would be prejudiced by the restoration of Appellant's right to appeal. While Appellant is by no means blameless, neither was the appellant in *Ware*. We do not believe that Appellant's one modest error (which itself bespoke a desire to exhaust all avenues of relief from the trial court's ruling, in the spirit of the comment to Rule 1701, concerning the procedure for seeking reconsideration in the trial court) warrants depriving him of his constitutional right to appeal.[8]

We do not intend to disparage the trial court for ruling as it did. The circumstances before it were extraordinary. Moreover, our order quashing Appellant's first appeal complicated the situation. We find it fair to characterize our misleading order as a breakdown in this Court that interfered with Appellant's right to appeal. Thus, the reasonable course for the trial court to have followed was to have restored Appellant's right to appeal *nunc pro tunc*, especially in light of our indication in our second quashal order that we believed such relief might be appropriate. Accordingly, we conclude that the trial court abused its discretion in denying Appellant's *nunc pro tunc* relief. Consequently, we reverse, and we direct the trial court to enter an order restoring Appellants' right to appeal *nunc pro tunc*.

Order reversed. Case remanded. Jurisdiction relinquished.

---

8. *See* Pa. Const. Art. 5, § 9.