J-A22040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE FOR ABFC 2006-OPT1 TRUST, ASSET BACKED FUNDING CORPORATION ASSET - BACKED CERTIFICATES, SERIES 2006-OPT1 C/O OCWEN LOAN SERVICING, LLC | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| DENNIS K. DIXON AND HEATHER E. MERRITT | : : : | |
| Appellants | : | No. 83 MDA 2021 |

Appeal from the Order Entered November 18, 2020
In the Court of Common Pleas of Berks County
Civil Division at No(s):  15-14763

MEMORANDUM PER CURIAM:                **FILED MARCH 21, 2022**

Appellants, Dennis K. Dixon and Heather E. Merritt (husband and wife), appeal *pro se* from the order entered in the Berks County Court of Common Pleas, which denied their "petition to open/strike" the summary judgment entered in favor of Appellee, Wells Fargo Bank National Association as Trustee for ABFC 2006-OPT1 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006-OPT1 c/o Ocwen Loan Servicing, LLC ("Wells Fargo") in this mortgage foreclosure action.  We quash the appeal as untimely.

This Court has previously set forth some of the relevant facts and procedural history of this appeal as follows:

On May 26, 2006, [Appellant Dixon] executed a promissory

note for a loan of $252,000. The note was secured by a mortgage on a property at 639 Old Airport Road in Amity, Pennsylvania, executed the same day by both [Appellants]. The lender and mortgagee was Option One Mortgage Corporation ("Option One"). There are two assignments of the mortgages, both representing a transfer from Option One under a later name, Sand Canyon Corporation, Appellee Wells Fargo, National Association as Trustee for ABFC 2006-OPT1 Trust, Asset Backed Funding Corporation Asset-Backed Certificates, Series 2006 OPT1: once on October 31, 2013, and again on January 22, 2014. The original mortgage and both assignments were recorded with the Berks County Recorder of Deeds. In the assignments, both assignor and assignee are listed with addresses as "c/o Ocwen Servicing, LLC." The officers signing both assignments were Ocwen employees.

Appellant Dixon (the sole obligor on the note) failed to make payment due on April 1, 2013, and it appears that no payments have been made since that time. As a result, Wells Fargo filed a complaint in mortgage foreclosure on July 6, 2015. After the trial court granted leave to effect service by posting, Appellants filed preliminary objections which the trial court overruled and dismissed. Appellants then filed a responsive pleading entitled "Combined Amended Answer to Wells Fargo's Complaint and Combined New Matter (As affirmative Defenses) Filed as a Matter of Course Under Pa.R.C.P. 1028(c)(1)."

On November 11, 2015, Appellants filed a 112-page document with the Record[er] of Deeds for Berks County titled "Notice of Counterfeit Assignment of Mortgage Instrument No. 2014006671 Recorded 03/24/2014, Evidenced by Forged Signature, False Representations, and Notary Fraud, Submitted for Recording by Terra Abstract and Stern & Eisenberg, PC (with Proof Attached)" ("Counterfeit Notice").

The trial court set a hearing for May 9, 2016, ordering Appellee to produce the original "wet ink" note and mortgage. At the hearing, Appellant Merritt did not appear, and Appellant Dixon, after inspecting the documents, did not deny his signature appeared on them. The trial court accordingly entered an order on May 12, 2016, finding that

> Wells Fargo possesses the original note ("Note") and mortgage. The trial court also struck Appellants' "Combined Amended New Matter (As Affirmative Defenses)," as well as all allegations within Appellants' "Combined Amended Answers" that relate to Appellants' position that Wells Fargo lacks standing because of problems with the assignments.

***Wells Fargo Bank National Association as Trustee for ABFC 2006-OPT1 Trust v. Dixon***, No. 1143 MDA 2017, at 2 (Pa.Super. Sept. 18, 2018) (unpublished memorandum) (quoting Trial Court Opinion, 9/18/17, at 1-3), *appeal denied*, 654 Pa. 545, 216 A.3d 1019 (2019).

On April 12, 2017, Wells Fargo moved for summary judgment. Wells Fargo attached to its motion an affidavit from Sean Flannery, Contract Management Coordinator from Ocwen Loan Servicing, LLC. Mr. Flannery stated in the affidavit that Appellants' mortgage was assigned, and that Appellants had failed to make payments since April 2013. Following a hearing, the trial court granted summary judgment in favor of Wells Fargo on June 19, 2017. The trial court entered an *in rem* judgment in favor of Wells Fargo for $318,274.16 (as of June 3, 2016), plus interest. The trial court also struck Appellants' "Counterfeit Notice" from the record and declared it void. This Court affirmed the judgment in Wells Fargo's favor on September 18, 2018, and our Supreme Court denied allowance of appeal on July 22, 2019. ***See id.***

On October 7, 2019, Appellants filed a "petition to strike" the summary judgment entered in favor of Wells Fargo. Wells Fargo filed a response on October 25, 2019. On November 21, 2019, Appellants filed a supplement to their petition to strike. The court denied Appellants' petition to strike on

November 26, 2019.

Appellants filed another "petition to open/strike judgment" on November 6, 2020.  Wells Fargo responded on November 17, 2020.  On November 18, 2020, the trial court denied Appellants' petition.  Appellants subsequently filed a notice of appeal, which was docketed on January 8, 2021.  On February 5, 2021, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellants filed on February 25, 2021.  On April 19, 2021, this Court issued a rule to show cause why the appeal should not be quashed as untimely.  Following Appellants' response, this Court discharged the rule and referred the issue to the merits panel.

Appellants raise the following issues for our review:

> Did the [trial] court err by failing to apply the ***Carpenter v. Longan***, 83 U.S. 271 (1872) precedent to Appellee's mortgage foreclosure, which established the common law rule that it is the note that must be assigned in order for Appellee to show it held enforceable interests in such note relative to Appellants, and to prove it had standing to foreclose against the mortgage?

> Since there are no note assignments to [Appellee], is the judgment against Appellant "void" under the ***Longan*** precedent?

> Did the [trial] court deprive Appellants of their real property absent due process and equal protection of applicable laws under the U.S. Constitution, by failing to strike the record-proven "void" judgment entered October 15, 2020 upon Appellants' November 6, 2020 "petition to strike 'void' judgment," since the record does not support nor justify judgment?

(Appellants' Brief at 4).

As a preliminary matter, we must address the timeliness of Appellants' notice of appeal. The Rules of Appellate Procedure require that the notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). In general, appellate courts do not have the authority to enlarge the time for filing a notice of appeal. Pa.R.A.P. 105(b). This Court has explained:

> The rule provides of no exceptions. In fact, the rule emphasizes that the filing of a timely notice of appeal is the *sine qua non* of a proper appeal from a final order by stating that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal. ..." This clearly implies that the only failure that **does** affect the validity of the appeal is the failure to file a timely notice of appeal. It is this failure that we have no jurisdiction to excuse.

***Cubano v. Sheehan***, 146 A.3d 791, 794 (Pa.Super. 2016) (emphasis in original) (internal citation omitted).

"Even when a party has filed an untimely notice of appeal, however, appellate courts may grant a party equitable relief in the form of an appeal *nunc pro tunc* in certain extraordinary circumstances," including non-negligent circumstances related to the appellant or his counsel. ***Criss v. Wise***, 566 Pa. 437, 442, 781 A.2d 1156, 1159 (2001). To file an appeal *nunc pro tunc* on these grounds, the appellant must show: (1) the appeal was filed late as a result of non-negligent circumstances related to the appellant or his counsel, (2) the notice of appeal was filed shortly after the expiration date, and (3) the

appellee was not prejudiced by the delay. ***Vietri ex rel. Vietri v. Delaware Valley High School***, 63 A.3d 1281, 1284 (Pa.Super. 2013).

"The exception for allowance of appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly established that [he] attempted to file an appeal, but unforeseeable and unavoidable events precluded [him] from actually doing so." ***Criss, supra*** at 443, 781 A.2d at 1160. "[D]elays in the U.S. mail are both foreseeable and avoidable[; thus, the] failure to anticipate a potential delay in the mail [is] not such a non-negligent circumstance for which an appeal *nunc pro tunc* may be granted." ***Id.*** at 444, 781 A.2d at 1160. "[R]egardless of the season, an appellant has a duty to suspect delays when mailing a notice of appeal." ***Id.*** at 444 n.3, 781 A.2d at 1160 n.3 (reversing Superior Court's decision to remand for additional findings of fact related to timeliness of notice of appeal where Ms. Wise's counsel deposited notice of appeal in mailbox on December 22nd and appeal was due at Prothonotary's office, approximately 30 miles away, on December 28th; failure to anticipate potential holiday delay in mailing did not constitute non-negligent circumstance to warrant grant of *nunc pro tunc* relief).

Instantly, the trial court denied Appellants' petition at issue on November 18, 2020. Therefore, Appellants had 30 days—until Friday, December 18, 2020—to file a timely notice of appeal. ***See*** Pa.R.A.P. 903(a). In response to this Court's rule to show cause, Appellants explained the

untimely filing of their notice of appeal, in pertinent part, as follows:

> The trial court's Order was dated 11-18-20[.] That gave me until 12-18-20 to file our Notice of Appeal. I spoke with the Berks County Prothonotary's office to confirm whether I could file the Notice in person. They said <u>no</u> due to COVID. It would have to be mailed. So mail it we did on 12-15-20 via U.S. Certified Mail just in case the mail was not on time due to COVID, at least we would have preserved the mailing date. That provided 3-days for the Notice to reach the Berks County Prothonotary's Office. (Copies of the green card front and back, with the certified mail receipt are attached).
>
> The mail historically takes 1 to 2-days and at most 3-days to move the 18 miles from Douglassville to Reading. But even if it took 3-days, that still would have put our Notice of Appeal in at the 30-day timeline for an appeal on 12-18-20.
>
> But for some reason, the U.S. Postal Service took "19-days" to deliver our Notice of Appeal to Reading on 01-07-21. (**See** the USPS tracking for green card article number confirming delivery on 01-07-21.) The Berks Prothonotary time stamped it on 01-08-21 at 10:54 a.m. But didn't scan it into the system until 01-11-21 for some reason. (**See** cover page of the Notice of Appeal and filing fee receipt attached.) You will have to ask them why there was a delay in scanning, and of course no one from the Post Office will have any explanation for the tardy 19-day delivery to Reading.
>
> Lastly, the USPS tracking receipt attached, states that our mailing was **"Delivered to Agent for Final Delivery."** We didn't ask for any "agent" to be involved in the delivery! I checked the "Addressee" box on the green card for delivery instructions. (**See** attached copy of green card in top right corner.)
>
> So, since we did in fact do everything within the allotted 30-day window for filing a Notice of Appeal, and paid both the Berks Prothonotary and your office for our filing, the U.S. Postal Service saw to it that it would be a 19-day delay in delivering it, and involved an "agent" for final delivery no less, that we did <u>not</u> request on the green card.

> This information should show more than enough "good cause" for not quashing the appeal, as we acted within the rules for filing an appeal. But due to outside factors beyond our control, we should not be punished for those factors causing an unexplained delay in getting our Notice to Reading for filing on 12-18-20.

(Response to Rule to Show Cause, filed 4/28/21, at 1-2) (emphasis in original).

Our review of the relevant tracking information confirms that Appellants' notice of appeal was mailed on December 15, 2020, via First-Class Mail (with a Certified Mail Receipt), at 1:17 PM from Douglassville, PA. The notice of appeal arrived in Reading, PA for "final delivery" on January 7, 2021, at 11:33 AM.

Notwithstanding Appellants' contention that "historically" the mail takes anywhere from one to three days to travel from Douglassville to Reading, according to the United States Postal Service website, "[a]s a result of the ongoing COVID-19 emergency, certain packages may take longer than usual to arrive."[1] The COVID-19 alert regarding mailing delays was effective April 17, 2020, so it was in effect at the time Appellants mailed their notice of

---

[1] (**See** USPS.COM at https://www.usps.com/ship/first-class-mail.htm?_gl=1*1xywxow*_ga*MTk4NzY3Njg5OS4xNjQ2NzEyNDE3*_ga_3 NXP3C8S9V*MTY0NjcxMjQxNy4yLjEuMTY0NjcxNDU0My4w) (Last Visited March 7, 2022).

appeal.[2]  Just as the holidays can create mailing delays, Appellants should have known that the ongoing COVID-19 pandemic might have caused mailing delays beyond the "historical" one to three-day delivery window.  *See Criss, supra*.  Additionally, the fact that Appellants were not permitted to enter the courthouse to file their notice of appeal in person due to the COVID-19 pandemic does not change our result.  Appellants do not indicate when they spoke to the Berks County Prothonotary's Office to inquire about whether they could deliver the notice of appeal in person, but their response to the rule to show cause suggests that they waited until the appeal period was only days from expiring to gather this information.  Under these circumstances, we cannot say that non-negligent circumstances exist to excuse Appellants' untimely filing.  *See id.*  Accordingly, we quash the appeal as untimely.

_____

[2] We note that on March 16, 2020, the Pennsylvania Supreme Court declared a general, statewide judicial emergency until April 14, 2020, on account of COVID-19.  *In re General Statewide Judicial Emergency*, ___ Pa. ___, 228 A.3d 1281 (2020).  The Order authorized the president judges in the individual judicial districts to suspend time calculations for the purposes of time computation relevant to court cases as well as time deadlines.  *Id.*  The Supreme Court extended the judicial emergency in several supplemental orders, directing that the emergency shall cease on June 1, 2020. *See In re General Statewide Judicial Emergency*, ___ Pa. ___, 234 A.3d 408 (2020).  Thus, no judicial emergency order was in effect when Appellants filed their notice of appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/21/2022