J-A16035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GNS ENTERPRISES 9, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AMA RIDGE, LLC, AMA MOREHEAD, | : | No. 477 EDA 2024 |
| LLC, AND AMA ANDORRA, LLC | : | |

Appeal from the Order Entered January 9, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230301304

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 2, 2025**

Appellant, GNS Enterprises 9, LP, appeals from the order entered in the Philadelphia County Court of Common Pleas, sustaining the preliminary objections of Appellees, AMA Ridge, LLC, AMA Morehead, LLC, and AMA Andorra, LLC, and dismissing the amended complaint with prejudice.  We affirm.

The relevant facts and procedural history of this matter are as follows. On June 3, 2022, the parties executed a purchase and sale agreement in which Appellant agreed to purchase Appellees' interests in three McDonald's restaurants in Montgomery County and Philadelphia.  The agreement included the purchase of all equipment used to operate the restaurants, and a pre-closing inspection protocol whereby Appellant was to inspect the equipment and develop a "punch list" of necessary repairs.  Appellees would then have

up to 30 days after the closing date to conduct any necessary repairs to the items listed. Ultimately, the transaction closed on August 1, 2022.

On March 10, 2023, Appellant filed a complaint raising claims for breach of contract, breach of express warranties, and unjust enrichment. Essentially, Appellant alleged that some of the equipment in the subject restaurants was in poor condition and did not conform to specifications of McDonald's.

On August 7, 2023, Appellees filed preliminary objections in the nature of a demurrer. Specifically, Appellees alleged that Appellant's complaint did not allege that it had participated in the pre-closing inspection. Thus, Appellees insisted that Appellant waived the right to complain about defects in the equipment as a result. Moreover, Appellees alleged that the parties' contract only obligated Appellees to ensure the equipment was in good working condition until 30 days after closing.

On August 25, 2023, Appellant filed an amended complaint in lieu of responding to Appellees' preliminary objections. On October 12, 2023, Appellees again filed preliminary objections, arguing that the amended complaint did not cure the defects identified in Appellees' original preliminary objections. Appellant did not respond to these preliminary objections.

On January 9, 2024, the trial court sustained Appellees' preliminary objections and dismissed the matter with prejudice. On January 12, 2024, Appellant filed a motion seeking to vacate the January 9, 2024 order, and to allow for the filing of an amended complaint *nunc pro tunc*. Specifically, Appellant asserted that the preliminary objections to the amended complaint

were "solely served via electronic case filing" and that, due to "administrative oversight," counsel did not see the preliminary objections or note to file a response. (*See* Motion to Vacate, 1/12/24, at 3-4). Appellant further averred that counsel continued to advance the case and engage in discovery, did not intend to abandon Appellant's claims, and that Appellees would not be prejudiced by granting Appellant's requested relief.

On February 6, 2024, Appellees filed a response in opposition, arguing that there were no non-negligent reasons excusing Appellant's failure to respond to the preliminary objections. Appellees also argued that Appellant should have filed a motion for reconsideration, as Appellant incorrectly assumed the court had sustained the objections as unopposed rather than on the merits.

On February 8, 2024, prior to the court's ruling on the motion to vacate, Appellant timely filed a notice of appeal. The court subsequently entered an order dismissing Appellant's motion to vacate as moot. The court did not order, and Appellant did not file, a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant raises the following issues for review:

> Given the broad scope of plenary power to review, should this Honorable Court reverse the trial court's order of January 9, 2024, overruling the preliminary objections to the amended complaint and reinstating this litigation?
>
> In the alternative, if this Honorable Court finds that the preliminary objections were properly sustained, should this Honorable Court modify the trial court's

order of January 9, 2024, to reflect a dismissal without prejudice or to provide [Appellant] with twenty (20) days to file a second amended complaint?

In the alternative, if this Honorable Court finds that the preliminary objections were properly sustained, should this matter be remanded to the Court of Common Pleas for a determination regarding whether a less severe remedy other than dismissal with prejudice could cure the issues raised in the preliminary objections?

(Appellant's Brief at 5).

Appellant's issues are related, and we address them together. Appellant first asserts that its amended complaint sufficiently alleged and pled facts necessary to form the basis of a breach of contract claim and an unjust enrichment claim in the alternative. Appellant further argues that even if the court properly sustained Appellees' preliminary objections based on Appellant's failure to respond, dismissal of the litigation with prejudice was not an appropriate remedy. Appellant claims that the preliminary objections did not establish facts prohibiting Appellant from recovering under any legal theory. Appellant also emphasizes that amendments to a complaint should be liberally allowed. Appellant concludes that the court erred in dismissing its complaint with prejudice, and asks this Court to remand to allow Appellant to file a second amended complaint, or for a "less severe remedy" than dismissal with prejudice to cure any issues raised in the preliminary objections. (**See** Appellant's Brief at 5). We disagree.

Our scope and standard of review over an order sustaining preliminary objections is as follows:

Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the [a]ppellant's complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of preliminary objections in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary.

*Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1099 (Pa.Super. 2000), *appeal denied*, 567 Pa. 751, 788 A.2d 381 (2001) (quoting *Donahue v. Federal Exp. Corp.*, 753 A.2d 238, 241 (Pa.Super. 2000)).

Further, "to successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Albert v. Erie Ins. Exch.*, 65 A.3d 923, 928 (Pa.Super. 2013) (citation omitted).

The Pennsylvania Rules of Civil Procedure provide, in relevant part:

**Rule 1026. Time for Filing. Notice to Plead**

(a) Except as provided by Rule 1042.4 or by subdivision (b) of this rule, every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, but no pleading need be filed unless the preceding pleading contains a notice to defend or is

endorsed with a notice to plead.

Pa.R.C.P. 1026. Pursuant to this rule, after the filing of preliminary objections, an opposing party has 20 days after service of the preliminary objections to file either an amended pleading, or a response to the preliminary objections. **See** Pa.R.C.P. 1026, 1028(c)(1). **See also** Pa.R.C.P. 1017(a)(4) (classifying preliminary objections and response thereto as pleadings).

The Pennsylvania Supreme Court has explained: "'[Rule 1026] is not mandatory but permissive. We have held that late pleadings may be filed 'if the opposite party is not prejudiced and justice requires. Much must be left to the discretion of the [trial] court.'" **Peters Creek Sanitary Auth. v. Welch**, 545 Pa. 309, 313-14, 681 A.2d 167, 170 (1996) (quoting **Paulish v. Bakaitis**, 442 Pa. 434, 441, 275 A.2d 318, 321-22 (1971)). Nevertheless: "[T]he trial court does not abuse its discretion in striking a pleading as untimely where it finds that a party's blatant disregard for the time limits established by the Rules of Civil Procedure, without just cause for the delay, constitutes an abject indifference to the Rules." **Id.** at 315, 681 A.2d at 170.

Further:

> The trial court may grant *nunc pro tunc* relief: (1) where the appellant demonstrates that a late filing was the result of non-negligent circumstances, that the request for *nunc pro tunc* relief was made shortly after the relevant deadline passed, and that relief would not prejudice the other party; (2) where a breakdown in court operations occurred; or (3) where fraud has been established. **Vietri ex rel. Vietri v. Delaware High Sch.**, 63 A.3d 1281, 1284 (Pa.Super. 2013); *see also* [**Lenhart v. Cigna Cos., Inc.**, 824 A.2d 1193, 1196 (Pa.Super. 2003)] (explaining that the failure to file a post-trial motion must not stem from counsel's

negligence or from a failure to anticipate foreseeable circumstances).

*Carr v. Michuck*, 234 A.3d 797, 802 (Pa.Super. 2020). Importantly, "mere neglect or administrative oversight of counsel **cannot** justify the allowance" of filings *nunc pro tunc*. *Bethke v. City of Philadelphia*, 282 A.3d 884, 890 (Pa.Cmwlth. 2022) (quoting *Lawrence Cnty. v. Pa. Lab. Rels. Bd.*, 469 A.2d 1145, 1149 (Pa.Cmwlth. 1983)) (emphasis added).[1]

Instantly, the trial court explained:

> …[Appellant] failed to timely file an amended complaint in opposition to the Preliminary Objections **OR** timely opposition. The response date to oppose the Preliminary Objections was November 2, 202[3]. The court did not decide the matter until more than two months later, during which time [Appellant] could have easily "beat the court to the docket" and filed an amendment or opposition.
>
> After the court ruled on the objections, [Appellant] sought to vacate the court's order to allow the filing of a second amended complaint *nunc pro tunc*. [Appellant] took the position that the Preliminary Objections were filed late (correct), and that the only notice received (which, pursuant to the court's rules was entirely proper notice),[2] was electronic and counsel apparently lost track of the case due to "administrative oversight." Because counsel was, unbeknownst to the court and without any activity on the docket, "continuing to advance the case," counsel has

_____

[1] Although decisions of the Commonwealth Court are not binding upon this Court, they may be considered as persuasive authority. *Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 554 (Pa.Super. 2017). Given the reasoning provided by Appellant for its failure to timely file a response to Appellees' preliminary objections, this case is persuasive.

[2] *See* Pa.R.C.P. 205.4(g) (permitting local courts to establish electronic filing systems and for parties to complete service of filings other than original process by electronic transmission). *See also* Phila.L.R.C.P. 205.4(f)(7) (noting local rules and procedure for electronic filings).

> suggested that the court should not have sustained the objections or should grant [Appellant] relief because [Appellees'] filing was also late.
>
> [Appellant's] submissions did not, in the court's view, meet the standard for excusing their failure to file a timely response. In fact, [Appellant] had more than two months beyond the deadline before the court ruled. Counsel had an obligation, after filing the amended complaint in response to [Appellees'] first set of preliminary objections, to monitor the docket for some type of response.

(Trial Court Opinion, 5/16/24, at 1-2) (emphasis in original). The court also concluded that Appellees raised meritorious objections warranting dismissal of the matter and that Appellant, who had filed no opposition, could not assert substantive challenges to the court's determinations after the fact. (*See id.*)

The record supports the court's analysis. Appellant did not respond to Appellees' October 12, 2023 preliminary objections within the 20-day deadline, and Appellant took no action to attempt to cure this defect until after the court's order sustaining the preliminary objections almost two months later. *See* Pa.R.C.P. 1026; *Peters Creek Sanitary Auth., supra*. Further, Appellant did not present the court with non-negligent circumstances to warrant the grant of *nunc pro tunc* relief. *See Carr, supra*.[3] Appellant's explanation that counsel had committed an "administrative oversight" by failing to note Appellees' electronic filing does not constitute non-negligent, extraordinary circumstances justifying the grant of *nunc pro tunc* relief. *See Carr, supra*; *Bethke, supra*. Thus, we cannot say that the court abused its

---

[3] Appellant does not claim that a breakdown in the operations of the court or fraud occurred to otherwise warrant *nunc pro tunc* relief. *See id.*

discretion in dismissing the complaint with prejudice. *See Peters Creek Sanitary Auth., supra*.

Moreover, even if the trial court had granted *nunc pro tunc* relief and allowed Appellant to file an amended complaint, Appellant would not be entitled to relief. Appellant argues that it pled facts which would establish a claim for a breach of contract. According to Appellant, it pled the existence of a contract between the parties with its material terms, a breach of the contract due to Appellees' failure to provide machinery and equipment in good working order and repair at the time of conveyance of the properties, and resultant damages in the form of the total cost to repair and replace the machinery. Appellant admits that it did not provide Appellees with the punch list prior to closing but argues that notice is not a required element of a breach of contract claim. Further, Appellant insists that even if notice was relevant to its claim against Appellees, it would only be relevant to new matter defenses by Appellees. Appellant also submits that whether adequate or timely notice of the defects was provided is not appropriately assessed at such early stages of litigation.[4]

_____

[4] Appellant does not develop any argument regarding its claim of breach of express warranties, so we consider that claim waived on appeal. *See* Pa.R.A.P. 2119 (discussing requirements of argument section on appeal).

Appellant also argues that it presented a viable claim for unjust enrichment. Nevertheless, that doctrine is inapplicable here because Appellant admits that the relationship between the parties is governed by the purchase and sales agreement and the terms of that contract. *See Toppy v. Passage Bio, Inc.*, *(Footnote Continued Next Page)*

In response, Appellees argue that the court properly sustained the preliminary objections and dismissed the actions with prejudice because the allegations in Appellant's amended complaint constitute admissions to Appellant's waiver of the right to claim deficiencies in the equipment at the subject stores. Specifically, Appellees note that Article III of the sales agreement contained an inspection protocol pursuant to which the parties were to jointly inspect the equipment of the subject restaurants prior to closing and develop a punch list if any items were not in proper condition. Appellees contend that in the initial complaint, Appellant did not allege that it had participated in an inspection or developed a punch list and therefore waived the right to challenge the condition of the equipment. Appellees also contend that Appellant's attempt to amend the complaint did not cure the defects, because Appellant merely averred in the amended complaint that it had completed a partial inspection, but could not complete the full inspection because an unidentified representative of Appellees had been diagnosed with COVID. According to Appellees, even accepting these averments as true, this constitutes an admission that Appellant participated in a partial pre-closing inspection but elected not to proceed with punch list protocol.

Further, Appellees argue that Appellant's breach of contract claim fails as a matter of law, because the sales agreement required Appellant to notify

_____

285 A.3d 672, 687 (Pa.Super. 2002) (stating: "Critically, the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract").

Appellees of any allegedly deficient items and the opportunity for Appellees to correct such deficiencies, which Appellant did not do. Additionally, Appellees emphasize that the contract required the condition of the subject equipment to be based upon McDonald's specifications. Appellees insist that McDonald's conducts regular inspections of franchise restaurants, inspected each of the subject stores before closing, and did not identify the issues raised by Appellant as violations of McDonald's requirements in effect at the time. Therefore, Appellees assert that Appellant failed to plead a viable claim in its initial or amended complaint, and that amending the complaint once again will not demonstrate a viable breach of contract claim.

Here, our review of the record shows that in its amended complaint, Appellant alleged that it had performed its obligations and responsibilities under the purchase agreement, and that Appellees had breached the agreement by "failing to convey and transfer the restaurant machinery and equipment" in good working order and repair in accordance with McDonald's specifications. (*See* Amended Compl., 8/25/23, at ¶¶ 50-51). Nevertheless, the relevant portions of the sales agreement provide:

> 4.8 <u>Condition of Machinery, Equipment and Signs.</u> Except as listed on the punch list provided for in Article III hereof, as of the date hereof, as well as through the Effective Date, all of the machinery, equipment and signs at the Restaurants are and shall remain in good working order and repair in accordance with McDonald's specifications. The Restaurants shall possess, on the Effective Date, all Assets necessary to operate a McDonald's restaurant consistent with McDonald's National Restaurant Minimums. Seller has not removed or converted, nor shal[l] Seller, directly or

- 11 -

indirectly, remove or convert, any of the Restaurants tangible and intangible Assets used in the operation of the Restaurants or located at the Restaurants after the execution date of this Agreement.

(**See** Amended Compl., 8/25/23, at Ex. A, Article IV).

The condition of the buildings, equipment, machinery and Assets shall be in good working order as of the Effective date. **Representatives of Seller and Purchaser shall examine the building(s) and all of the machinery, equipment, and signs at the Restaurants**, including, but not limited to, the HVAC system(s), roof[(]s), and refrigeration system(s), prior to the Effective Date. **Any and all items that Seller is required to repair to place said items in operating condition in accordance with McDonald's standards shall be listed on a punch list, and Seller shall cause said repairs to be made at Seller's sole expense no later than thirty (30) days after the Effective date**. Subject to the immediately foregoing covenant, Seller shall be required to deliver the Assets in good working condition in accordance with McDonald's standards. The restaurants shall be current on all Department of Health licensing requirements and approvals. Seller has not received or are aware of any notice from the Department of Health or any pending or unaddressed issues or violations regarding any inspection made by the Department of Health at any of the Restaurants.

(**See** Amended Compl., 8/25/23, at Ex. A, Article III) (emphasis added). The agreement further provides that the purchaser shall promptly notify Seller, in writing, of any demand or claim which Purchaser has determined has given or could give rise to a right of indemnification under the agreement. (**See id.** at Article IX, 9.7). Per the agreement, the effective date was closing, or August 10, 2022. (**See id.** at Article I, 1.1).

Based upon the above, and upon Appellant's pleadings before the trial court and arguments, Appellant admitted that it participated in a partial

inspection process, but did not provide Appellees with the punch list, in writing, of any defects that must be fixed at Appellees' expense. Thus, we agree with Appellees that Appellant failed to plead a viable claim in its amended complaint, and that amending the complaint once again would not demonstrate a viable breach of contract claim. As such, the trial court properly sustained Appellees' preliminary objections and dismissed the complaint with prejudice. **See Albert, supra**; **Marks, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/2/2025